**SALVINI v. SALVINI et al. (No. 2094.)**

Court of Civil Appeals of Texas. El Paso.
Feb. 2, 1928.

Rehearing Denied Feb. 23, 1928.

I. Marriage ☞20(1)—To establish "common-law marriage," proof must show agreement to create marriage relationship for life, followed by cohabitation as man and wife.

For a common-law marriage, it must be shown that parties entered into agreement, either express or implied, to take each other for husband and wife during their natural lives, and proof must show that such agreement was followed by cohabitation and living together professedly as man and wife.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common-law Marriage.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. Marriage ⟨key⟩40(4)—Strength of presumption of agreement is governed by length of cohabitation.**

Length of period of cohabitation as man and wife governs strength of presumption as to existence of agreement.

**3. Marriage ⟨key⟩42, 47—Acts and declarations of parties and circumstances are material on existence of marriage.**

Acts and declarations of the parties as well as any circumstances which tend to show an agreement or the lack of one are material on question of whether a common-law marriage existed.

**4. Marriage ⟨key⟩20(1)—Agreement requisite for common-law marriage may be express or implied from conduct of parties.**

To create common-law marriage, the agreement to become husband and wife may be express, or it may be implied where conduct of parties with reference to subject is such as to induce belief in minds of each that they are thenceforth husband and wife.

**5. Marriage ⟨key⟩52—Instruction that agreement to intermarry in future does not constitute common-law marriage held warranted by evidence in proceeding to establish heirship.**

In proceeding to establish heirship or successorship to deceased as his common-law wife, evidence *held* to warrant an instruction that a mere agreement to intermarry at some time in the future would not constitute parties husband and wife, even if there should be a living together.

**6. Marriage ⟨key⟩20(2)—Mere agreement to intermarry in future, though parties·live together, does not constitute "common-law marriage."**

Mere agreement of parties to become husband and wife at some time in the future, even though there should be a living together, does not constitute a common-law marriage.

**7. Witnesses ⟨key⟩136—Refusal to permit one seeking to establish heirship as deceased's common-law wife to testify to deceased's statements respecting relationship, held proper (Rev. St. 1925, art. 3716).**

In proceeding by woman to establish heirship or successorship to deceased by showing she was his common-law wife, refusal to permit petitioner to testify as to statements made to her by deceased relative to their relationship, *held* proper, under Rev. St. 1925, art. 3716.

**8. Witnesses ⟨key⟩181—Bar against testifying to deceased's statements to petitioner claiming heirship as common-law wife held not waived by cross-interrogatory and letter not relating to transactions with deceased (Rev. St. 1925, art. 3716).**

In proceeding by woman to establish heirship or successorship to deceased by showing she was his common-law wife, cross-interrogatory in which she admitted having made claim to being wife of another man, and letter written by her, and introduced in evidence, on matter of the common-law marriage, *held* not to remove bar of Rev. St. 1925, art. 3716, precluding her testifying as to statements made to her by deceased relative to marital status, as they did not relate to transactions with deceased so as to waive objections to evidence of such transactions.

**9. Witnesses ⟨key⟩266—In proceeding to establish heirship as deceased's common-law wife, permitting intervener seeking escheat to cross-examine petitioner's witnesses held not error.**

In proceeding by woman to establish heirship as common-law wife of deceased, in which proceeding the district attorney intervened and sought escheat of property to the state, permitting district attorney to cross-examine petitioner's witnesses, *held* not error, though court had dismissed the district attorney's petition.

**10. Marriage ⟨key⟩47—In proceeding to establish heirship as deceased's common-law wife, statements of deceased that he was single held admissible.**

In a proceeding by a woman to establish, for purpose of succession or heirship, that she was deceased's common-law wife, statements of deceased that he was a single man *held* admissible on question of common-law marriage.

**11. Appeal and error ⟨key⟩843(3)—In proceeding to establish common-law marriage and consequent heirship, petitioner's assignment, on appeal, of insufficiency of evidence of other parties' relationship to deceased will not be considered on common-law marriage status.**

In proceeding by woman to establish heirship as deceased's common-law wife, her assignment, on appeal, that evidence was insufficient to support jury's finding as to the relation of other persons to deceased as half brothers and sisters, will be overruled since her right to recover did not depend on others' relationship to deceased, ·but on whether she was his common-law wife.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Proceeding by Nathalie Olive Salvini to establish heirship or successorship to the estate of Vincent Salvini, deceased, in which Maury Kemp, administrator, Celistino Salvini, Flora Salvini Manni, Maria Salvini Tamburlani, and the district attorney, for the State, intervened. From a judgment of the county court escheating the property to the State, all claimants other than the· State appealed to the district court, where judgment was rendered for Celistino Salvini, Flora Salvini Manni, and Maria Salvini Tamburlani, and Nathalie Olive Salvini appeals. Affirmed.

Chas. Owen, John F. Weeks, and John T. Hill, all of El Paso, for appellant.

Lea, McGrady, Thomason & Edwards, Fryer & Cunningham, C. W. Croom, C. L. Vowell, Dist. Atty., Kemp & Nagle, and E. R. Smith, all of El Paso, for appellees.

PELPHREY, C. J. This suit originated in the county court of El Paso county, Tex., by the filing by appellant of her petition to es-

tablish heirship or successorship to the estate of Vincent Salvini, deceased.

In her amended petition, appellant alleged that she was the common-law wife of deceased and as such was entitled to succeed to the estate; that because of her contributions of money and services toward the acquisition of the estate, it had become impressed with a trust, to the extent of any contribution she might be able to establish; and, that, in any event, she would be entitled to a part of the property as a partner.

Maury Kemp, the administrator of the estate, intervened and denied that she was the wife of deceased or had any interest in his property. Later Celistino Salvini, Flora Salvini Manni, and Maria Salvini Tamburlani, claiming to be the half-brother and half-sisters of deceased, filed in said cause their petition for partition. C. L. Vowell, district attorney in and for the Thirty-Fourth judicial district of Texas, filed a plea in intervention alleging that deceased died without devising his estate, and, having no heirs, prayed that the property escheat to the state of Texas. Appellees further answered appellant's petition by a general demurrer, a general denial, and alleged that they were the sole and only heirs of deceased.

A trial in the county court resulted in a judgment escheating the property to the state of Texas, and decreeing that the said Vincent Salvini, deceased, died without leaving heirs whatsoever.

From this judgment all the claimants except the state of Texas appealed to the district court of El Paso county, Tex., Sixty-Fifth judicial district. The case was tried to a jury in the district court and submitted on special issues.

On the issues submitted, the jury found as follows: (1) That Vincent Salvini left heirs at the time of his death; (2) that Celistino Salvini, Flora Salvini Manni, and Maria Salvini Tamburlani were the heirs of Vincent Salvini, deceased, and (3) that they were his half-brother and two half-sisters; (4) that there was no common-law marriage between Vincent Salvini and Nathalie Olive.

Upon these findings the court entered judgment in favor of Celistino Salvini, Flora Salvini Manni, and Maria Salvini Tamburlani as the heirs of Vincent Salvini, and denying the prayer of Nathalie Olive Salvini. During the trial of the cause the intervention of C. L. Vowell on behalf of the state of Texas was dismissed by the court on the ground that said C. L. Vowell had no authority to bind the state of Texas in the cause.

From the judgment as rendered Nathalie Olive Salvini has appealed to this court.

## Opinion.

Appellant has copied into her brief her motion for a new trial and has set it out as her assignments of error.

From a careful reading of the brief we find that she is asking for a reversal for the following reasons: (1) That the court erred in admitting evidence to impeach the marriage; (2) that the finding of the jury that appellant was not the common-law wife of deceased is unsupported by the evidence; (3) that the court erred in its charge on what constitutes a common-law marriage; that the court erred in refusing to charge the jury as to the contributions made by appellant to the accumulation of the property of deceased; that the court erred in excluding the deposition of appellant as to the transactions with deceased; that the court erred in permitting the district attorney to appear and cross-examine the witnesses of appellant, and in refusing to strike from the record all the evidence elicited by him in the case; that the court erred in refusing to strike from the record the evidence that the deceased had claimed to be a single man; that the court erred in admitting the depositions of witnesses as to the heirship of appellees; and that the court erred in refusing to instruct the jury that a marriage relation, if lawful in its inception, cannot become unlawful by reason of the subsequent bad faith of the parties on their subsequent failure or refusal to recognize the relation.

[1] The essential elements of a common-law marriage had been held to be: (1) There must be proof that the man and woman between whom the common-law marriage is sought to be established entered into an agreement between themselves, either express or implied, to take each other for husband and wife during their natural lives; and (2) the proof must show that such agreement was followed by cohabitation and living together professedly as man and wife. Bell v. Southern Casualty Co. (Tex. Civ. App.) 267 S. W. 531 (writ refused); Grigsby v. Reib, 105 Tex. 597, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011; Berger v. Kirby, 105 Tex. 611, 153 S. W. 1130, 51 L. R. A. (N. S.) 182. If either of these essentials is missing, the claimed common-law marriage is not established.

[2] Marriage is a status and is supposed to continue during the lives of the parties, and, while we do not hold that cohabitation and living together must continue for any certain length of time to show a marriage at common law, yet we are of the opinion the length of time which parties cohabit and live together as man and wife governs the strength of the presumption that there was or was not an agreement between them.

[3] We are of the opinion that the acts and declarations of the parties, as well as any circumstances which tend to show an agreement or the lack of one, are material on the question, and we think the court committed no error in admitting the evidence which appellant contends was for the purpose of impeaching the marriage. Appellant also contends

that the evidence was insufficient to support the finding of the jury that appellant was not the common-law wife of deceased.

On account of the sordidness of some of the evidence, we shall not here relate the evidence which we think sustains the jury's finding. The relation of the parties, as disclosed by the evidence, their mode of living, the testimony of Dr. Lynch and Joe Spivey as to the character of life led by appellant, and the testimony of Charlie Le Gay and Mr. Kemp as to their knowledge of transactions between the parties and the letters in the record, all taken together, we think, amply sustain the finding of the jury on the question of common-law marriage.

The court charged the jury on the question of common-law marriage as follows:

"Question No. 3. Do you find from a preponderance of the evidence that there was a common-law marriage between Vincent Salvini and Nathalie Olive?

"In connection with the foregoing question No. 3, you are instructed that, in order to constitute a common-law marriage, no license need have been obtained or ceremony performed, but it is necessary that a man and woman, each of whom is unmarried, mutually agree with each other to presently become husband and wife for the remainder of their lives, and with the intention of the time of living and cohabiting with each other as husband and wife, and it is further necessary after such agreement, if any, they do live and cohabit together and hold themselves out to the public as husband and wife. Such agreement to become husband and wife may be express, or it may be implied where the conduct of the parties with reference to the subject is such as to induce the belief in the minds of each other that they are thenceforth husband and wife. A mere agreement, if any, to intermarry, or become husband and wife at some time in the future, even though there should be a living together, would not constitute the parties husband and wife."

Appellant contends that the charge places undue restriction on the definition of a common-law marriage; that it is not necessary that the parties hold themselves out to the public as husband and wife; that the holding out to the public of each other as man and wife is only evidence of a marriage and that, therefore, the charge was upon the weight of the evidence; and that that part of the charge as to agreement to marry in the future is erroneous for the same reason.

[4-6] The charge as given, with the exception of that part relative to an agreement to marry in the future, is substantially the same as the charge given in Berger v. Kirby, supra, which was approved by the Supreme Court, consequently the assignment as to the charge without that part must be overruled. As to the latter part of the charge, we think it presents the law correctly. Cuneo v. De Cuneo, 24 Tex. Civ. App. 436, 59 S. W. 284, citing 1 Bish. Mar. and Div. § 262; Cartwright v. McGown, 121 Ill. 388, 12 N. E. 737,

2 Am. St. Rep. 105. We also think its submission was warranted by the evidence. Appellant introduced evidence that she and deceased were living together in 1903 and 1904, and yet Dr. Lynch, a witness for appellant, testified that in 1910, or thereafter, appellant told him that some day she and deceased might get married and go to the old country. This statement Dr. Lynch testified was made in the presence of deceased. Under that state of the evidence we think it was proper for the court to instruct the jury that a living together pursuant to a promise to marry in the future would not constitute the parties husband and wife.

The following special charge was requested to be submitted by appellant:

"Question No. 1. Do you find that Nathalie Olive Salvini, while living with Vincent Salvini, if you so find, contributed to the accumulation of the property possessed by Vincint Salvini at his death? Answer yes or no.

"In this connection, and in determining the above question, you are instructed that you may consider the contributions made, if any, by Nathalie Olive Salvini, in money and by her mutual efforts while living with Vincent Salvini, if you so find that she lived with him.

"Question No. 2. If you answer the above question in the affirmative, you will answer the following question:

"What do you find the value of her contribution towards the accumulation of the property held by Vincent Salvini at the time of his death to be? Answer by stating the amount or proportion of the estate."

[7, 8] We have carefully reviewed the evidence and find none that would warrant the submission of this issue, and the assignment is overruled. Nor do we think the court erred in refusing to permit appellant to testify as to statements made to her by the deceased. We think the testimony falls within the provisions of article 3716, Rev. St. 1925 (Leahy v. Timon, 110 Tex. 73, 215 S. W. 951), and we do not agree with the contention of appellant that the introduction of the cross-interrogatory No. 3, in which she admitted to having made claim to be the wife of a man named Smith, and the letter from appellant to Charlie Le Gay removed the bar under the statute.

Both cross-interrogatory No. 3 and appellant's letter to Le Gay bore on the question of the common-law marriage, but were not as to any transactions with deceased; therefore, they could in no way serve as a waiver to transactions with the deceased. Austin v. Rupe (Tex. Civ. App.) 141 S. W. 547.

[9] Appellant in her sixth assignment complains of the action of the court in permitting the district attorney to appear in the case and cross-examine her witnesses. While it is true that the court in its judgment held that the district attorney was without authority to bind the state of Texas in the suit and dismissed his intervention, yet we are unable to

see how the rights of appellant were in any manner prejudiced by his appearance in the suit. The facts elicited by him on cross-examination were not denied by appellant and came from herself and her own witnesses and could have been brought out either by appellees or the court. Appellant's assignments of error as to the court's action in the matter are therefore overruled.

[10] The statements of deceased that he was a single man, we think, were clearly admissible on the question of a common-law marriage, and the court committed no error in refusing to strike such statements from the record.

[11] The assignment of appellant as to the admission of the depositions of witnesses for appellees and the question of the sufficiency of the evidence to support the jury's finding as to the relation of appellees to deceased is also overruled.

Appellant's right to recover in this case did not depend upon the question of whether or not appellees were the heirs of Salvini, but upon the question of whether or not she was the common-law wife.

The jury having found that she was not the common-law wife and the evidence being sufficient to support that finding, then appellant has made no showing of such an interest in the estate as would entitle her to complain of its disposition.

From a careful examination of the record in the case we find no error, and the judgment of the trial court is in all things affirmed.

Affirmed.