## DE SHAZO v. CHRISTIAN.
### No. 5697.

Court of Civil Appeals of Texas. Amarillo.
Dec. 10, 1945.

Rehearing Denied Jan. 7, 1946.

Alvin R. Allison, of Levelland, and Nelson, Brown & McCleskey, of Lubbock, for appellant.

Carl E. Ratliff and D. E. Magee, both of Levelland, and Bradley & Wilson, of Lubbock, for appellee.

STOKES, Justice.

J. F. DeShazo died in the month of April 1942 and his sister, Myrtle Christian, appellee herein, became the administratrix of his estate. After the estate had been administered, she filed in the County Court of Hockley County her final account in which she named the mother, brothers, and sisters of J. F. DeShazo as being the proper persons to receive the property and proceeds still remaining in her hands. The appellant filed a contest of the application and alleged that she was the wife and surviving widow of the deceased J. F. DeShazo; that all of the property of the estate was their community property and, there being no children, she was entitled to all of the property of the estate. On December 21, 1943, the county court entered an order granting the application of the administratrix and denying the contest of the appellant. She perfected an appeal to the district court and upon a trial de novo that court granted the application of the appellee and denied appellant any relief, upon the ground that appellant was not the wife of J. F. DeShazo at the time of his death.

Appellant duly excepted to the judgment, gave notice of appeal, and presents the case in this Court upon a single assignment of error, to the effect that the court erred in holding that appellant was not the common-law wife of J. F. DeShazo at the time of his death in the face of the uncontroverted evidence that she was his common-law wife.

The record shows that J. F. DeShazo and the appellant were legally married in 1934 and continued to live together as husband and wife until September 15, 1941. On that day the District Court of Hockley County, in response to her petition theretofore duly filed, granted to appellant a divorce from J. F. DeShazo and restored her maiden name of Alva Reed. It was also decreed that all of the property belonging to them was community property, but in deference to a written contract of settlement theretofore entered into between them the property was not specifically divided. Appellant's contention that she was the common-law wife of J. F. DeShazo at the time of his death is based upon their relationship and conduct immediately following the granting of the divorce. She testified that in June 1941 her husband was in delicate health and they decided they could not longer operate the farm and that they would dispose of it. She said that their purpose was to divide the proceeds of the sale of the farm and other property so that her husband could go to a hospital and she could enter into some kind of business. She said that they

then went to an attorney's office in Lubbock and were informed by the attorney that in order to consummate a legal division of their property it would be necessary for one of them to procure a divorce and that they thereupon employed the attorney to file a suit on her behalf for a divorce from her husband. She said they then went back to their farm home, where they resided and maintained the same relations as they had before maintained until September 15, 1941, when the divorce case was tried and she was granted a divorce. She said that after the divorce was granted she returned to the farm home and she and J. F. DeShazo continued their relations the same as before the divorce was granted until January 1942 when they completed the sale of their property, including the farm, and that she then went to Fort Worth where she has since resided and her husband went to a hospital.

Throughout the history of this State what is known as a common-law marriage has been recognized by its laws. It has been steadfastly maintained by our courts, however, that in order to establish such a marriage there must be proof that the man and woman between whom the marriage is sought to be established entered into an agreement between themselves, either express or implied, to take each other for husband and wife during their natural lives, and the proof must further show that such agreement was followed by cohabitation and living together professedly as man and wife. The term "professedly" means that there must be evidence that they held each other out to the public as their respective spouses. None of these three essentials, standing alone, is sufficient to constitute a common-law marriage, but all three of them must appear and must be alleged and shown by the testimony in any case in which such a relationship is brought into question. Bell v. Southern Casualty Co., Tex.Civ.App., 267 S.W. 531; Reed v. State, 95 Tex.Cr.R. 492, 255 S.W. 619; Berger v. Kirby, 105 Tex. 611, 153 S.W. 1130, 51 L.R.A.,N.S., 182; Schwingle v. Keifer, Tex.Civ.App., 135 S.W. 194; Perales v. Flores, Tex.Civ.App., 147 S.W.2d 974.

The record reveals no testimony, either by the appellant or any other witness, to the effect that an express agreement was made by the appellant and her former husband to establish, renew, or continue their conjugal relations under the guise of a common-law marriage and, in our opinion, the testimony was wholly insufficient to justify the implication that any such agreement was entered into between them. On June 24, 1941, the day appellant filed her suit for a divorce, she and J. F. DeShazo entered into a written contract of settlement concerning the property owned by them, in which it was recited, among other things, that "whereas, the said Alva DeShazo, due to the unkind, harsh, tyrannical conduct toward her by the said J. F. DeShazo, has separated from the said J. F. DeShazo and has determined to file a suit for divorce in the District Court of Hockley County, Texas, subject to trial in the September 1941 term of said court." By reason of this and other premises set out in the contract, all of the property was listed and it was agreed that the entire property would be sold and the proceeds divided between them. It was shown by the testimony of one witness that in October 1941, about a month after the divorce was granted, appellant stated that she was going to put in a beauty shop and she was not going to slave for any man, that she intended to purchase some nice clothes and thereafter "paddle her own boat."

In regard to appellant's claim that she and her former husband continued their relationships and cohabitation in the same manner as they had before the divorce decree was entered, in addition to the testimony of appellant that she returned with J. F. DeShazo to the farm and continued to reside there, other witnesses testified that they visited at the home and farm of appellant and DeShazo and found both of them living there; that appellant apparently was discharging her duties about the place in the ordinary and usual manner and that, as far as they knew, appellant and DeShazo considered each other as man and wife. There was other testimony, however, which indicated strongly that appellant was not cohabitating with J. F. DeShazo in the usual manner but that they occupied separate rooms and that they remained at the farm only for the purpose of disposing of the livestock, farm machinery, and the land, which they owned in common, and dividing the proceeds between them. One witness testified that in October 1941 appellant told her she did not spend her nights at their farm home but that after dark she went to her sister's home a short distance from the farm, spent the nights there, and returned to the farm before daylight the following mornings. This witness and her

husband purchased some of the furniture belonging to appellant and J. F. DeShazo, and she said that she and her husband observed there were two beds in the DeShazo home and that it was evident that each of them was being occupied by someone. She said her husband declined to take the furniture from the DeShazo home at the time it was purchased, on the ground that J. F. DeShazo would not have a place to sleep if they should take away the bed they had purchased and that DeShazo thanked him for his kindness in permitting it to remain for awhile. In addition to this, the record shows that J. F. DeShazo filed in the District Court of Hockley County a suit against the Aetna Life Insurance Company and it was pending on March 14, 1942. On that day appellant filed in that suit a disclaimer of any interest in any proceeds that might be recovered, stating also "that at the time this suit was filed Alva Reed DeShazo, your intervenor herein, was the lawfully wedded wife of the plaintiff, John Foster DeShazo, and had been his wife for many years and was his wife on the 18th of November, 1939, the time the injury was sustained by plaintiff on which this cause is based. That she and plaintiff lived together as husband and wife until on or about the 15th day of September, 1940 on which day and date she obtained her decree of divorce from plaintiff in this court." Based on these allegations she prayed that no judgment for costs be entered against her in any event. This disclaimer was filed only about a month prior to the death of J. F. DeShazo. On December 29, 1941, appellant executed an instrument in which she referred to the decree of divorce and recited that since the entry of the judgment she and J. F. DeShazo had divided and separated their property and that the terms of the judgment of divorce had been carried out and the parties satisfied. This instrument was signed "Alva Reed," the name which was restored to her by the divorce decree. On the same day appellant and J. F. DeShazo executed a general warranty deed in which they conveyed their farm lands to Frank Karvas, Jr. The deed was executed in the name of J. F. DeShazo and Alva Reed, a feme sole, and was signed and acknowledged in the same manner.

In regard to the question of whether or not appellant and her former husband held themselves out to the public as husband and wife after the divorce decree was entered, two witnesses testified that on one occasion,

about September 20, 1941, they went to the DeShazo home upon a business mission and J. F. DeShazo introduced appellant to them as his wife. Other witnesses testified that they recognized and considered appellant and J. F. DeShazo to be husband and wife, but the undisputed testimony was to the effect that no publicity was given to the divorce suit nor the decree granting to appellant a divorce and that none of the parties testifying knew a divorce had theretofore been granted. The sale of the farm and disposition of other property belonging to the parties were completed on December 29, 1941, and appellant moved to Fort Worth where she lived continuously thereafter. J. F. DeShazo went to Temple, entered a hospital, and remained there for a short time. He then left there and went to Ardmore, Oklahoma, where he lived with his mother until February 6, 1942, when he went to Fort Worth and entered a hospital where he underwent an operation and he died there in April 1942. This conduct on the part of both of the parties is consistent with the recital in their contract of settlement made on the day the petition for divorce was filed and is also consistent with the statement of appellant, testified to by one of the witnesses, that she did not intend to be a slave for any man but that she was going to "paddle her own boat."

In January 1942, after the farm had been sold, appellant and DeShazo went to the bank at Lubbock and delivered to the bank for collection a vendor's lien note with instructions to the banker to deposit half of the proceeds to each of their accounts. At that time they told the banker they were separated and appellant had her account entered at the bank in the name of Alva Reed.

On February 6, 1942, when DeShazo left his mother's place at Ardmore, Oklahoma, he delivered to the appellee, Myrtle Christian, a note in which he expressed the desire that she attend to his business affairs in the event his contemplated surgical operation was not successful. If he had considered appellant to be his wife, it would seem this responsibility would have been committed to her.

▮ From the foregoing résumé of the testimony, we think it is conclusive that appellant wholly failed to show by legal and competent evidence that she was the common-law wife of J. F. DeShazo at the time of his death or at any time after the divorce was granted on September 15, 1941.

As we have stated, there was no testimony that an express agreement to continue their marital relations was entered into and the testimony was wholly insufficient to justify the implication that such an agreement was consummated between them. Although appellant testified that she and her former husband continued their marital relations after the divorce decree, there was evidence to the contrary which justified the trial court in holding against her contention in that respect, and the testimony relative to their holding each other out to the public as husband and wife was meager and inconclusive. The act of J. F. DeShazo in introducing appellant as his wife on the one occasion mentioned could reasonably have been prompted by the fact that they had lived in the community for a number of years, had given no publicity to the divorce decree, and the neighbors and citizens of the community did not know anything about the divorce.

In our opinion, the testimony not only warranted the court in rendering the judgment that was entered, but no other judgment could properly have been rendered. The judgment will therefore be affirmed.