**MIDDLEBROOK et al. v. WIDEMAN et al.**

No. 6286.

Court of Civil Appeals of Texas. Texarkana.

June 18, 1947.

Rehearing Denied June 26, 1947.

Pollard, Lawrence, Blackburn, Reeves, Crawford & Jarrel, of Tyler, for appellants.

Smith & Smith, of Tyler, for appellees.

HARVEY, Justice.

Chester and Artis Middlebrook, and their mother, Henrietta Dennis, joined by her husband, Joe Dennis, filed this suit in trespass to try title to an interest in 92.6 acres of land in Smith County, Texas, which was deeded to Monroe Middlebrook during his lifetime. The claim of the plaintiffs was based upon an alleged common law marriage between Henrietta Dennis, before her marriage to Joe Dennis, and Monroe Middlebrook, it being contended that the land in dispute was the community estate of Henrietta and Monroe and at his death one-half of the land became vested in Henrietta; an undivided one-eighth interest each became vested in Chester and Artis Middlebrook, and an undivided one-eighth interest each became vested in Dussie Wideman and Louie Middlebrook, the four children of Monroe Middlebrook. Trial was to a jury and at the close of the plaintiffs' testimony the trial court peremptorily instructed a verdict in favor of defendants and entered judgment in their favor. From such action of the court the plaintiffs have perfected an appeal.

Determinative of the points presented herein is whether or not the evidence as introduced by the plaintiffs raised the issue of a common law marriage to be passed upon by the jury. Henrietta testified that she and Monroe lived together some ten or twelve years and two sons were born to them; that prior to living with him she was ceremonially married to Lem Williams; that after she left Monroe and long before his death she married (another so-called common law marital relationship) Joe Dennis, with whom she had been living in the status of husband and wife for some twenty-five or thirty years at the time of the trial of this suit. She stated directly, in response to questioning, that she had been married twice, the first time to Lem Williams and the second time to Joe Dennis. Too, she stated that most of her children were born out of wedlock. two of

them going by the name of Williams, one by the name of Folsom, another by the name of Thompson, one by the name of Starks, and a couple by the name of Middlebrook. Two other witnesses were introduced by her on the issue of common law marriage, the first of whom, Will Crawford, testifying that he was an ex-convict; that as a boy he lived in a neighboring community some seven or eight miles away from that in which Monroe and Ada Hays (Henrietta) lived; that they lived together, and she always went by the name of Ada Hays; that he never heard Monroe say anything about Ada being his wife, but that he said the two boys were his; that the only place he ever saw them together in town was at a store where they were buying supplies; he never saw them at church together; that Ada helped with the crops until she left. The other witness, Arch Williams, testified he lived in an adjacent community to Ada Hays and Monroe Middlebrook when Monroe moved Ada and her children into his house; that some five or six years later he built another house and moved Ada into that; but did not live there with them, but instead built himself another house on the other side of the 30-acre tract of land; that Monroe lived with her, except he did not live in the same house with her; he never heard Monroe call her his wife, but referred to her as Ada; they bought supplies together, Ada cooked for him, and he saw them together at public gatherings. Also, Monroe said the boys were his.

 In Texas, common law marriages are recognized. At an early date the inconvenience of traveling, the immense distances between remote settlements and the few places where marriage licenses could be obtained, as well as the fact that those who were authorized to perform marriage ceremonies were in many cases not available, caused numbers of men and women to contract common law marriages. The courts gave validity to such marital agreements, and prescribed certain requisites which must exist in order for them to be effective and enforceable. The essential elements of such contracts are an agreement to be husband and wife, accompanied

by cohabitation, and a holding out to the public that such a relationship is intended by the parties. The existence of the facts necessary to establish the marriage may be proved, it is true, circumstantially as well as otherwise. Strict compliance with these requirements is a necessity, and each one must be established by sufficient proof before courts will lend judicial sanction to any assertion of a claim that such a relationship exists. Present conditions are not such that one can find much excuse in resorting to the dubious common law mode of consummating marriage. In a number of jurisdictions the doctrine has been repudiated and in a great many of the states of this country by legislative enactment it has been abrogated.

■ In this case we are led to the conclusion that Henrietta failed to present such facts as would be sufficient legally upon which a jury could have found that a common law marital status between her and Monroe existed. In fact, the testimony of all the witnesses, including herself, indicated the contrary. Without repeating the testimony hereinabove detailed, one is led to believe that the conduct on the part of her and Monroe established at best a meretricious relationship. After she left Lem, she lived in the house with Monroe, and then on the same place in a separate dwelling, without being certain that Lem was dead. Then she consorted with various and sundry other members of the opposite sex, with manifest fruition, according to her testimony. Then, she moved into the protective fold of Joe, before the death of Monroe, and for thirty years has claimed to be Joe's spouse. It is interesting to speculate what would have been the contention on her part with regard to being Monroe's wife in the event that she and Joe had fallen into the toils of the law under a morals charge. It seems that Henrietta, better known as Ada, donned and doffed the sacred and solemn cloak of connubial status as her fitful and fleeting fancy impelled her. One should not play fast and loose, nor blow hot and cold. Courts do not view with an approving eye the conduct of one who treats lightly the most serious and sacred of all human relationships, nor are they over-zealous in extending aid to one under circumstances such as make it quite doubtful that he is entitled to the relief sought.

■ Henrietta's act in leaving Monroe and marrying Joe Dennis effectively rebuts any inference or implications that may be drawn from her course of conduct with Monroe, if it could be called favorable to her. In 18 R.C.L., page 434, we find this discussion of the rule, with authorities cited:

"An inference of marriage will be overcome where the parties separate and one of them, while the other is known to be alive, marries or cohabits with a third person. The principle that lies at the foundation of this doctrine is that the presumption of innocence in the one case would render the party guilty of bigamy, and thus the courts would in effect presume a greater guilt than that which they would raise the presumption to obviate."

See also 35 Am.Jur., page 311; Walton v. Walton, Tex.Com.App., 228 S.W. 921.

■ The trial court properly sustained an objection to a question asked each of the witnesses, Will Crawford and Arch Williams, as to what was the reputation in the community with respect to Henrietta and Monroe being married. They had not qualified by stating that they knew such reputation, nor by giving facts which showed they were in position to express an opinion about the matter under inquiry. Stewart v. Profit, Tex.Civ.App., 146 S.W. 563. In addition, inasmuch as Henrietta had testified that she had been married twice, first to Williams and then to Dennis, that testimony negatived the existence of a marriage with Middlebrook. Under such facts, an opinion on the part of the witnesses as to the reputation in the community with reference to the marital status of the parties in question would not have been admissible. Schwingle v. Keifer, Tex.Civ. App., 135 S.W. 194.

The judgment of the trial court is affirmed.