**CORNELL et al. v. MABE et al.**

**MABE et al. v. CORNELL et al.**

No. 14478.

United States Court of Appeals Fifth Circuit.

Aug. 6, 1953.

Rehearing Denied Oct. 26, 1953.

Barker & Barker, Owen D. Barker, Doyle McDonald, Thos. H. Dent, Louise C. Rowen and Herminie McDonald Hanson, Galveston, Tex., for appellants-appellees.

Thomas H. Lee and James W. Lee, Houston, Tex. (Williams, Lee & Kennerly, Jesse J. Lee and Irl F. Kennerly, Houston, Tex., of counsel), for appellees-appellants, Gladys Justice Mabe, and husband.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

In the latter part of 1896, or in the early part of 1897, Leveston Justice moved into the house with Mary Sanders and her family in Galveston, Texas, as a boarder. Mary had a daughter named Hattie who lived with her. A few months before Leveston appeared on the scene Hattie had given birth to a son, Benny, who was apparently born out of wedlock. It was not long before Leveston's status as a boarder developed into a relationship somewhat more entrenched, for in 1898 Hattie gave birth to another son, Claude, which Leveston acknowledged as his child. A daughter, Gladys, was born May 31, 1900. Hattie and Leveston lived on one side of the house and her mother and brother lived on the other side. When the house in which they lived was destroyed by a storm in 1900, shortly after Gladys was born, Hattie and Leveston moved into another house. Hattie went by the name of Hattie Justice during this time and was considered by the members of her family and others as Leveston's wife.

It is not disclosed how long Hattie and Leveston lived together, but in the latter part of 1901 they had separated and Leveston was living in the house with another man. On September 27, 1902, Leveston procured a marriage license to marry one Sallie Carter, but they were never married. On December 7, 1903, he married Willie Etta Simmons. They were divorced on April 7, 1906. Leveston was married to Ida Lee on September 14, 1908, and they continued to live together until his death. Hattie married Frank Burton in March, 1910, under the name of Hattie Sanders. She died on some undisclosed date in "Harrisburg." Although there is no record of a ceremonial marriage having been performed between Hattie and Leveston, and no record of their having been divorced, during his lifetime Leveston recognized Claude, who died in 1925, and Gladys as his children.

Leveston died intestate on February 22, 1936. At the time of his death, he and Ida, who has since remarried and is known as Ida Justice Cornell, owned as community property a ten acre tract of land in La Marque, Galveston County, Texas, on which they resided. After Leveston's death, Ida continued to occupy the property as her homestead. In 1940, she subdivided a portion of the ten acre tract into seven lots numbered consecutively 1 to 7. A plat

of this subdivision was filed for record on April 4, 1940. At a later date she subdivided other portions of the original tract into additional building lots. All of the lots thus subdivided, except the one on which her house was situated, were subsequently sold. The first sale of lots was made to Ed and Pearl Morgan by a deed dated October 22, 1940, which was filed for record the following day. This deed purported to convey lots 1 and 2 of the first subdivision; however, by reason of a mutual mistake, the Morgans took possession of lots 6 and 7 and have held exclusive and adverse possession to those lots since the date of the conveyance.

On October 9, 1951, Gladys Justice Mabe, joined by her husband, residents of Pennsylvania, claiming to be the only living child of Leveston at the time of his death, instituted this action against Ida Justice Cornell and 49 other persons who owned record title to the lots purchased from Ida out of the original ten acre tract, all residents of Texas, to recover an undivided one-half interest in the property, and for other relief. Jurisdiction depends upon diversity of citizenship and a controversy involving an amount in excess of $3,000 exclusive of interest and costs. 28 U.S.C.A. § 1332.

The primary issue joined by the pleadings was whether Gladys was the legitimate child and heir at law of Leveston Justice, born of a common law marriage between him and Hattie Sanders. The court, with the consent of counsel, severed this issue from the remaining issues involved and submitted it to a jury. The verdict on this issue was for the plaintiffs. The remaining issues were tried to the court, which determined, *inter alia,* that the plea of limitations interposed by the Morgans under the Texas ten year statute of limitations should be sustained. Judgment was entered decreeing that the plaintiffs have and recover an undivided one-half interest in the land in question, save and except lots 6 and 7, which were adjudged to be vested in the Morgans, and another lot which is not now in question. All of the parties have appealed.

The value of the property retained by Ida Justice Cornell was stipulated to be $7,100, one half of which Gladys claimed by inheritance. The remaining defendants hold title to either one, two or four lots each, the agreed values of which indicate that the value of the interest asserted by plaintiffs against the property owned by each of them, considered individually, is less than $3,000. However, the value of the entire original tract of land is approximately $50,000, thus, the value of the interest claimed by plaintiffs is approximately $25,000. During the course of the trial, all of the defendants except Ida moved the court for dismissal of the suit as to them, since as to each of them the matter in controversy did not exceed $3,000. They excepted to the overruling of this motion. The object of this suit was not to enforce against each of the defendants a separate and distinct claim, nor was it to recover an undivided interest in a number of lots of land claimed by the individual defendants. The complaint alleged that Gladys was the equitable owner of an individed interest in a single ten acre tract of land and that she had been unlawfully deprived of the possession and use of such property. Unquestionably, the matter in dispute is the whole of the property and not the individual lots into which it has been subdivided. These defendants contend, however, that the court erred in overruling their motions to dismiss because the suit involves severable and distinct controversies, each of which involves less than the jurisdictional amount. They cite and rely upon Cooper v. Preston, C.C., 105 F. 403, and Bates v. Carpentier, C.C., 98 F. 452. Those two cases do not deal with a situation where, as here, the defendants' interests were derived from a common source of title. It is true that where a suit is brought against several defendants asserting claims against each of them which are separate and distinct, the test of jurisdiction is the amount of each claim, and not their aggregate. However, when the action is to recover a single tract of land and the several defendants claim under a common source of title, the matter in controversy is the entire tract

of land and not its several parts. The trial court properly overruled the defendants' plea to its jurisdiction.

The defendants complain of the failure of the court to instruct the jury, in defining a common law marriage, that the parties must have intended to be "permanently married" or "married for the duration of their natural lives." It is contended that the failure of the court to so instruct the jury, under the facts of this case, constituted prejudicial error. It is well settled that in order to enter into a valid common law marriage the parties must intend that their relationship as husband and wife be a permanent one and not merely a temporary living together so long as it is mutually convenient or desirable for the parties.[1] The defendants' evidence did not controvert the testimony that Hattie and Leveston had lived together and that Gladys was their child. Their primary defense was that the relationship was meretricious and did not rise to the dignity and sanctity of a marriage. In support of this view they introduced evidence tending to prove that neither of the parties considered their relationship a permanent one.[2] The defendants timely and clearly urged upon the court the necessity for an instruction which would unambiguously inform the jury that the parties must have intended any assumed marital relationship to be a *permanent* one,—that an intention to live together, even under a holding out as husband and wife, only so long as it suited their mutual convenience, would not suffice to establish a common law marital relationship. It is true that in many cases a charge in the language which the trial court used[3] would sufficiently present the issue. Such language has been approved by the Texas Courts. Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124; Berger v. Kirby, 105 Tex. 611, 153 S.W. 1130. However, the present is not a case where the relationship between man and woman continued until dissolved by death or even for any lengthy period. Furthermore, and of controlling importance, the circumstances, both before and after the common law marital relationship, were such as to raise grave doubt of the reliability of the indicia which the law usually accepts as authority for declaring a common law marriage to have existed. This magnified the possibility of confusion on the part of the jury.

Under these circumstances, we think the court, in the interest of a fair submission of this vital issue, should have instructed the jury to the effect that the parties, in order to establish a common law marriage, must have agreed and intended that their relationship as husband and wife be permanent. Since this pertinent principle was not otherwise covered by the general charge of the court, we hold that the failure to so instruct the jury was reversible error.

The plaintiffs have appealed from the portion of the judgment which sustained the Morgans' plea of limitations as to

---

1. Monroe v. Prophet, 5 Cir., 49 F.2d 1021; Schwingle v. Keifer, Tex.Civ.App., 135 S.W. 194, affirmed 105 Tex. 609, 153 S.W. 1132; Bell v. Southern Casualty Co., Tex.Civ.App., 267 S.W. 531; Salvini v. Salvini, Tex.Civ.App., 2 S.W.2d 963; DeShazo v. Christian, Tex.Civ.App., 191 S.W.2d 495; Perales v. Flores, Tex. Civ.App., 147 S.W.2d 974; McChesney v. Johnson, Tex.Civ.App., 79 S.W.2d 658.

2. This evidence shows that Leveston was married by license and ceremony to another woman shortly after he and Hattie ceased to live together and that prior to that he secured a license to marry still another woman, without ever having obtained a decree of divorce from Hattie. In 1908, he was married by license and ceremony to Ida Lee with whom he continued to live for 27 years. Hattie gave birth to an illegitimate child just prior to the time she met Leveston. Shortly after her separation from him she represented herself as a single woman. She lived with another man and later married him under her maiden name without ever having secured a divorce from Leveston.

3. "It isn't necessary that there be any ceremony performed by a minister or magistrate. It is necessary, however, to establish a common-law marriage that the parties be capable of marrying each other, that there be an agreement between the parties that they shall be husband and wife, and that there be cohabitation, a living together, in open and above-board fashion, a holding out of each other to the public as man and wife."

lots 6 and 7.[4] They rely upon the rule that the possession of a tenant in common, or one entering possession under him, will be presumed to be in right of the common title, and in order to affect the cotenant out of possession with the adverse character of his holding, actual or constructive notice of the repudiation of the cotenancy must be brought home to the cotenant out of possession. The trial court held that the Morgans' possession to lots 6 and 7, with a recorded deed to lots 1 and 2, for a period of more than ten years, considering the juxtaposition of these lots, was sufficient notice to plaintiffs of the adverse nature of their claim. Plaintiffs argue, however, that to constitute a constructive ouster of a cotenant, there must be possession under a recorded deed which describes the land actually possessed. This view cannot be sustained.

In Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137, 1139[5] the court held:

"It is not necessary that actual notice of an adverse holding and disseizin be brought home to a cotenant. Such notice may be constructive, and will be presumed to have been brought home to the cotenant when the adverse occupancy and claim of title is so long-continued, open, notorious, exclusive, and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the cotenant out of possession; or the jury may rightfully presume such notice."

▮ The question presented is one of fact. It is not controverted that the Morgans held exclusive and adverse possession of the lots for over ten years; that there was of record a deed from plaintiffs' cotenant purporting to convey to them in fee similar lots in close proximity to the lots actually held, and that a plat of the subdivision in which all four lots were located was also of record. This evidence does not require a holding, as a matter of law, that

plaintiffs did not have constructive notice of the character of the Morgans' possession of the lots in question, therefore, the finding that they did, being supported by substantial evidence, is not clearly erroneous. It is affirmed.

Upon the appeal of the plaintiffs the judgment is affirmed. Upon the appeal of the defendants, the judgment is affirmed in part and reversed in part, and the cause remanded for further proceedings not inconsistent with this opinion.

Judgment affirmed in part, and in part reversed.

---

4. Art. 5510, Vernon's Ann.Civil Statutes.

5. See also Scibert v. Markham, Tex.Civ. App., 116 S.W.2d 501; Republic Production Co. v. Lee, 132 Tex. 254, 121 S.W.2d 973; Parr v. Ratisseau, Tex.Civ. App., 236 S.W.2d 503; Carr. v. Alexander, Tex.Civ.App., 149 S.W. 218.