**Patricio CLAVERIA, Appellant,**

v.

**ESTATE of Otha Faye McQuaid CLAVERIA, Appellee.**

**No. 20048.**

Court of Civil Appeals of Texas, Dallas.

Feb. 28, 1980.

Rehearing Denied April 9, 1980.

Richard F. Loomis, Jr., Dallas, for appellant.

James J. Hartnett, Turner, Hitchins, McInerney, Webb & Hartnett, Dallas, for appellee.

Before AKIN, STOREY and HUMPHREYS, JJ.

HUMPHREYS, Justice.

This is an appeal from an order sustaining a plea in bar in a probate proceeding. The appellant, Patricio Claveria, filed a will contest in the probate proceedings of the estate of Otha Faye McQuaid Claveria, Claveria's ceremonial wife. The administratrix of the estate filed a plea in bar, asserting that Claveria was not the surviving spouse of the deceased because a prior common-law marriage was an impediment to the validity of the ceremonial marriage. The trial judge found a common-law marriage, thus rendering invalid appellant's ceremonial marriage to the decedent. Consequently, Claveria was not an interested party under Tex.Prob.Code Ann. § 3(r) (Vernon 1956), so as to contest the decedent's will and to assert a community interest in the estate. Thus, the probate judge dismissed Claveria's claims and his contest. We hold, however, that the evidence was legally insufficient[1] to establish a prior common-law marriage. Accordingly, we reverse the order of the probate judge.

It is undisputed that Claveria and the decedent participated in a marriage ceremony in 1974 and thereafter lived together as husband and wife until the death of the decedent. The sole disputed question before the probate judge was whether appellee established that Claveria had entered into a prior undissolved common-law marriage in Bexar County with a woman whose first name was Carolina. Appellee admits that the ceremonial marriage of Claveria and the decedent is presumed valid. Tex. Fam.Code Ann. § 2.01 (Vernon 1975); *Texas Employers Insurance Association v. Elder*, 155 Tex. 27, 282 S.W.2d 371 (1955). Thus, in order to invalidate the ceremonial marriage, appellee had the burden of proving the elements of a pre-existing common-law marriage.

The elements of a common-law marriage are set out in Tex.Fam.Code Ann. § 1.91(a)(2) (Vernon 1975), which provides:

(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

.    .    .    .    .

(2) they agreed to be married, and after the agreement *they lived together in this state as husband and wife* and there represented to others that they were married. [Emphasis added.]

The case before us is somewhat unusual in that the appellee has attempted to establish the existence of a common-law marriage between Patricio and Carolina, despite the vehement assertions of both that no marriage existed between them. Appellee relies on Tex.Fam.Code Ann. § 1.91(b) (Vernon 1975), which provides:

(b) In any proceeding in which a marriage is to be proved under Subsection (a)(2) of this section, the agreement of the parties to marry may be inferred *if it is proved that they lived together as husband and wife and represented to others that they were married.* [Emphasis added.]

Apparently, the probate judge rejected the testimony of both Claveria and Carolina that there was no agreement to be married, and relied on the inference permitted by § 1.91(b). In holding that a common-law marriage existed, the probate judge had to find that Claveria and Carolina held themselves out to the public as man and wife and that they lived together as man and wife. Only if these elements are proved may an inference of an agreement to be married be drawn. The question before us is the legal and factual sufficiency of the evidence to support these two elements of a common-law marriage.

To establish the first element, that Claveria and Carolina held themselves out to the public to be man and wife, appellee

---

1. The contention that there is "no evidence" to support a finding or that a fact is "established as a matter of law," involves the legal sufficiency of the evidence. Sustaining a legal sufficiency point of error usually requires reversal and rendition. "Insufficient evidence" and "great weight and preponderance" points of error test the factual sufficiency of evidence. When a factual insufficiency point is sustained, the court of civil appeals can only remand for another trial. *See* O'Connor, *Appealing Jury Findings*, 12 Hous.L.Rev. 65 (1974).

introduced a warranty deed and deed of trust, both dated the same day. These documents from a United States government agency were the only proof in the record that Carolina ever acknowledged to anyone that Claveria was her husband. As further proof of holding out to the public, appellee produced Claveria's statement made in 1972 that he was married to a woman named "Caroline." This lone statement was made on a deposition in an unrelated lawsuit four years after Claveria moved to Dallas. Carolina has never lived in Dallas. The statement was made to strangers and adverse litigant's attorneys rather than to any person in Bexar County or at any time germane to this dispute. Consequently, it cannot be taken as a "holding out" of Carolina as his wife at the time of his alleged cohabitation with her.

■ There is no testimony from anyone in the community where Carolina and Claveria lived which would support a finding of holding out to the public to be man and wife. The designation of Carolina and Claveria in the deed and deed of trust is legally insufficient to establish this element. As the court stated in *Ex parte Threet*, 160 Tex. 482, 333 S.W.2d 361, 364 (1960):

> It was held in *Drummond v. Benson*, Tex. Civ.App.1939, 133 S.W.2d 154, writ refused, that isolated references to a person as being his or her husband or wife constituted no evidence of a common law marriage. Similarly, the introduction of defendant as her husband to two close friends, and telling two or three others that she was married to defendant constituted no evidence that plaintiff and Threet were living together as husband and wife and holding themselves out to the public as man and wife. Under the Texas decisions, there can be no secret common law marriage as such. The secrecy is inconsistent and irreconcilable with the requirement of a public holding out that the couple are living together as husband and wife. [Footnote omitted.]

Nor does Claveria's deposition statement establish the holding out requirement. The record is clear that Carolina was not present when the statement was made and thus she is not connected with the statement in any manner. Thus, there is no evidence to establish that Carolina and Claveria jointly held themselves out to the public to be man and wife.

■ Appellee's proof on the second element, that Carolina and Claveria lived together as man and wife, consisted of Claveria's deposition testimony and the testimony of both that they had "lived together for two months." The deposition testimony does not bear on cohabitation. The fact that Claveria and Carolina lived together for two months does not show living together as *man and wife*. This second element of a common-law marriage requires *more* than sexual relations under a common roof.

Several cases have set out the requirements of cohabitation to establish a common-law marriage. In *Gary v. Gary*, 490 S.W.2d 929, 932 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.), the court set out the three elements of a common-law marriage and added that "each of the elements is necessary, and it is particularly essential that the parties mutually agree that they would then and thenceforth be husband and wife and that the following cohabitation be on the faith of this mutual agreement and promise." And in *Humble Oil & Refining Co. v. Jeffrey*, 38 S.W.2d 374, 376 (Tex.Civ. App.—Austin 1931), *aff'd* 55 S.W.2d 521 (Tex.Com.App.1932, judgmt. adopted), cohabitation was defined as living together, claiming to be married, in the relationship of husband and wife, and doing things ordinarily done by husband and wife. In *De-Shazo v. Christian*, 191 S.W.2d 495, 496 (Tex.Civ.App.—Amarillo 1945, writ ref'd n.r.e.), the evidence was held insufficient to establish a common-law marriage even though the woman established that she lived in the same house as her *former* husband and after *their* divorce. There was evidence that she had a separate bedroom and spent much of her evenings at her sister's house. Thus, that court held that the evidence of cohabitation and representations was "wholly insufficient to justify

the implication that any such agreement was entered into between them." Additionally, in *Ex parte Threet,* 160 Tex. 482, 333 S.W.2d 361, 364 (1960), the supreme court held that there was no evidence of cohabitation and thus no common-law marriage even though it was undisputed that the couple had sexual relations, and there was direct evidence of an agreement to be married.

The necessity of cohabitation as an element of common-law marriage was established by *Grigsby v. Reib,* 105 Tex. 597, 153 S.W. 1124 (1913). In *Grigsby,* the plaintiff introduced evidence that she had agreed with Grigsby to be husband and wife, that he had introduced her as his wife, and that they often had sexual relations at her residence. In an appeal from an adverse jury verdict, the plaintiff attacked an instruction that in order to find that plaintiff was the common-law wife of Grigsby, the jury must find that she lived with Grigsby as husband and wife *pursuant to an agreement to be married.* The sole question before the supreme court was the propriety of this instruction. In finding the instruction proper, the court stated: "The cohabitation must be professedly as husband and wife, and public, so that by their conduct towards each other, they may be known as husband and wife." 153 S.W. at 1130. The strong policy reason for requiring cohabitation to prove a common-law marriage was enunciated by that court as follows:

> One of the parties to such a contract might marry and raise a family, and dying without disclosing the former marriage, the "common-law widow" could come forward, claim to be the surviving wife, and thus displace the woman who had borne the hardships of wife and mother, brand the children as bastards, and take the position as survivor with her rights in the estate. A rule for the regulation of the sacred rights of marriage, and the rights of families that make such wrongs possible, should not be recognized in civilized governments.

153 S.W. at 1130.

Appellee argues that the fact that Claveria purchased the property named in the deed of trust at the time they were living together shows that they "purchased the home they were living in together as husband and wife" but the proof does not contain the word "home." The record does not disclose how long they lived in the house after it was deeded to them or when Claveria sold the property. Any inference based upon the purchase of this property that they intended to be married to each other at any specific time is mere speculation. The down payment was only two hundred dollars. Reasonable minds could equally draw the conclusion that the property was bought strictly for resale and that they intended to divide the proceeds and go their respective ways, which is exactly what they did.

■■■■ Appellee has produced no evidence of an express agreement to be married, but is relying on the inference of an agreement allowed in section 1.91(b). This inferred agreement must be a present agreement, unconditional and unqualified, to be husband and wife as long as both of them live. *Schwingle v. Keifer,* 105 Tex. 609, 153 S.W. 1132 (1913); *Salvini v. Salvini,* 2 S.W.2d 963, 966 (Tex.Civ.App.—El Paso 1928, writ dism'd). Evidence of the representations made by the couple and the character of the couple's cohabitation must lead to the inference that the couple agreed to be husband and wife for the remainder of their lives. The evidence here does not lead to such an inference. Furthermore, in order to infer that the couple intended to remain together permanently, the trial judge had to infer that they were cohabiting from the fact that they lived together for two months. The inference urged by appellee that because they lived together for two months supports the inference that they intended to remain together permanently is unauthorized because it bases one inference upon another. *See Schlumberger Well Servicing Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854 at 858 (Tex.1969).

Appellee cites *Foix v. Jordan,* 421 S.W.2d 481 (Tex.Civ.App.—El Paso 1967, writ ref'd n. r. e.) and *Rodriguez v. Avalos,* 567 S.W.2d

85 (Tex.Civ.App.—El Paso 1978, no writ) to support the trial court's finding of valid common-law marriage. In *Foix* there was evidence of an express agreement to be married, i. e., the couple had participated in a Mexican church wedding. Evidence of cohabitation was provided by testimony of their residence in a house with but one bedroom and but one bed. In *Rodriguez* the evidence of cohabitation was thirty-years residence together and the conception of three children. Thus, we do not regard these authorities as applicable in the present case.

█ Accordingly, we hold that where an inference of an agreement to be married is relied on under Tex.Fam.Code.Ann. § 1.91(b) (Vernon 1975), testimony that a couple lived together for two months and the proof showing only one mortgage loan transaction wherein they both acknowledged themselves to be husband and wife is not legally sufficient evidence to support an inference that they had agreed to live together as *husband and wife*.

█ Furthermore, the conduct of Carolina and Claveria after Claveria left Bexar County and came to Dallas overcomes any inference authorized by § 1.91(b). Claveria came to Dallas as early as 1968, married the decedent in 1974, and worked for the same employer for about ten years. He and the decedent lived together until her death in 1978. So far as this record discloses, Claveria and Carolina parted company years before appellant and the decedent were ceremonially married. In a case involving a strikingly similar fact situation, *Rosetta v. Rosetta*, 525 S.W.2d 255, 261 (Tex.Civ.App.—Tyler 1975, no writ) Justice McKay stated:

In *Middlebrook v. Wideman*, 203 S.W.2d 686 (Tex.Civ.App.—Texarkana, 1947, no writ) it was held that where it is claimed a common law marriage existed the act of the woman in marrying another effectively rebutted any inference that might have been drawn on a common law marriage, and quoted 18 R.C.L., p. 434: " 'An inference of marriage will be overcome where the parties separate and one of them, while the other is known to be alive, marries or cohabits with a third person.' "

"*The presumption in favor of validity of the second marriage, notwithstanding the prior common-law marriage, 'is one of the strongest, if, indeed, not the strongest, known to law', and may even outweigh positive evidence to the contrary.*" (Emphasis added.) *Mullinax v. Mullinax*, 447 S.W.2d 428 (Tex.Civ.App.—Waco, 1969, no writ); *Texas Employers Ins. Assn. v. Elder*, 155 Tex. 27, 282 S.W.2d 371 (1955); *Pacific Employers Indemnity Co. v. Aquirre*, 431 S.W.2d 33 (Tex.Civ. App.—Waco, 1968, writ ref'd n.r.e.).

The forceful language of the supreme court in *Texas Employers Ins. Association v. Elder*, 155 Tex. 27, 282 S.W.2d 371, 374 (1955), was adopted by our 63rd Legislature when it declared the State Policy on this subject. Section 2.01 of the Family Code provides:

In order to promote the public health and welfare and to provide the necessary records, this code prescribes detailed and specific rules to be followed in establishing the marriage relationship. However, in order to provide stability for those entering into the marriage relationship in good faith and to provide legitimacy and security for the children of the relationship, it is the policy of this state to preserve and uphold each marriage against claims of invalidity unless strong reasons exist for holding it void or voidable. Therefore, every marriage entered into in this state is considered valid unless it is expressly made void by this chapter or unless it is expressly made voidable by this chapter and is annulled as provided by this chapter. When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid as against each marriage that precedes it until one who asserts the validity of a prior marriage proves its validity.

We interpret this statute as not only requiring competent evidence to invalidate a ceremonial marriage but also as limiting any presumptions to those favoring the latter

marriage. Thus, when an alleged prior marriage is based on inference, the presumption of the validity of the subsequent marriage effectively rebuts any inference of validity of the alleged prior marriage. Therefore, we hold that Claveria's marriage to deceased rebuts the alleged common-law marriage to Carolina.

Accordingly, appellee's motion for rehearing is overruled, our former opinion withdrawn, the order of the probate judge is reversed and judgment rendered that Claveria is an interested party under section 3(r) of the Texas Probate Code and therefore may contest the will. The Probate Court is directed to reinstate Claveria's contest and proceed to trial.

AKIN, Justice, dissenting.

This appeal concerns a construction of Tex.Fam.Code Ann. §§ 1.91(a)(2) and 1.91(b) (Vernon 1975) and the sufficiency of the evidence necessary to prove a common-law marriage under those sections. I would hold that the evidence is legally sufficient to support findings that Claveria and Carolina "lived together in this state as husband and wife and they represented to others that they were married." Since the evidence supports a finding on these two elements, an agreement to be married may properly be inferred under § 1.91(b). Consequently, I would affirm the probate judge's order finding a prior common-law marriage and barring appellant from contesting the decedent's will. Accordingly, I must dissent.

The two issues presented by this appeal are the sufficiency of the evidence of a holding out, i. e. that Claveria and Carolina represented to others that they were married, and the sufficiency of the evidence of cohabitation, i. e. that they lived together as man and wife. I agree with the majority's holding that the proof of these elements of a common-law marriage must support the inference that the couple intended their relationship to be permanent rather than indefinite or for a fixed period. With this principle in mind, I review the evidence of the "holding out" and "cohabitation" elements.

It is undisputed that Claveria and Carolina purchased a house and executed a deed of trust to the mortgagee as husband and wife. This occurred at the time they commenced living together, according to Claveria. The majority holds that this evidence is legally insufficient to prove that they held themselves out to others as man and wife. This holding seems to have two bases: First, that these representations were insufficient because of the audience to which they were made, and second, that the number of representations was insufficient. The majority points to the absence of testimony by community members as to a holding out by Claveria or Carolina that they were man and wife. I do not read § 1.91 as requiring that testimony by any particular group of persons is necessary to support a finding of a common-law marriage. Indeed, where the relationship was short and several years have passed, testimony from community members may be difficult to obtain. Admittedly the audience may be important under some circumstances. For instance, if a couple checked into a motel, purporting to be husband and wife, I would be inclined to hold that such a representation would not support a finding of a common-law marriage. The inference that the couple was engaged in an illicit relationship would be just as probable based upon such a representation, as the inference that they were engaged in a permanent relationship. But where, as here, the representation was made to a government entity and filed of public record, I see no logical basis for holding the representation legally insufficient based upon the audience to which it was made. The warranty deed and deed of trust were matters of public record, subject to inspection by members of the public at any time. Hence, they constituted a continuing representation to all members of the community and readily support an inference of permanence of the relationship. I cannot agree that the "holding out" element was not proved merely because there is no testimony from neighbor or community members that Claveria and Carolina held themselves out as husband and wife.

Neither can I agree with the second basis of the majority's holding that a specific number of representations is necessary to support a finding of a common-law marriage. The majority holds that because the warranty deed and deed of trust were part of one transaction, they are an isolated representation and thus legally insufficient to prove a "holding out." As authority for this proposition, the majority quotes an excerpt from *Ex parte Threet*, 160 Tex. 482, 333 S.W.2d 361, 364 (1960) which quotes *Drummond v. Benson*, 133 S.W.2d 154 (Tex. Civ.App.—San Antonio 1933, writ ref'd). Both cases are distinguishable on their facts.

In *Drummond* the court held that isolated references to a person as being his or her husband or wife constituted no evidence of a common-law marriage. The court in that case was concerned with isolated references over a period of years, all made outside the presence of the other spouse to the purported marriage. That situation is clearly distinguishable from a joint execution of public documents as husband and wife.

In *Ex parte Threet* there was evidence of only one introduction of the defendant as plaintiff's husband. The remaining representations by plaintiff that defendant was her husband were made outside his presence. However, in *Ex parte Threet*, the couple never shared a common residence. The plaintiff was a fifteen year old girl who occasionally had sexual relations with defendant at her parent's home over a period of four months. The couple never spent an entire night together. Clearly there was no evidence that the couple lived together as man and wife. The plaintiff in that case relied upon the representations to establish both the "holding out" and the "cohabitation" elements. The holding of *Ex parte Threet* was that these representations were insufficient to establish *both* elements of a common-law marriage. Thus *Ex parte Threet* is not authority for the proposition that multiple instances of a holding out as husband and wife is required before the evidence is legally sufficient to prove a common-law marriage. I cannot agree that accepting a warranty deed and executing a deed of trust on a residence for the couple is "no evidence" of a holding out as a husband and wife because it is part of a single transaction.

With respect to whether it was proven that Claveria and Carolina lived together as husband and wife, I reiterate my agreement with the general rule set forth in the majority opinion that the evidence of the character of the couple's cohabitation must support the inference that the couple intended their relationship to be permanent. However, I cannot agree that the joint purchase of a house in which the couple resides is "no evidence" that their relationship was intended to be permanent. The majority holds that: "Any inference based upon the purchase of this property that they intended to be married to each other at any specific time is mere speculation. . . . Reasonable minds could equally draw the conclusion that the property was bought strictly for resale and that they intended to divide the proceeds and go their respective ways, which is exactly what they did." I respectfully submit that the majority has reached an erroneous holding under an issue not presented in the case at bar. Their holding is that the joint purchase of property is no evidence of intent to be married. Under Tex.Fam.Code Ann. § 1.91(b) (Vernon 1975), appellant was not required to present evidence of an intent to be married. By holding that appellee's evidence was insufficient to prove an intent to be married, the majority has ignored the inference provided for by that section.

Under § 1.91(b) appellee was only required to prove a holding out as husband and wife, as previously discussed, and that Claveria and Carolina lived together as man and wife. It is not disputed that the couple lived together for at least several months; the question is whether they lived together as man and wife. I agree with the majority that in order to prove a couple lived together as man and wife there must be evidence of the character of the couple's cohabitation supporting the inference that the relationship was permanent rather than temporary or indefinite. The evidence in

the instant case shows that Claveria and Carolina jointly purchased the house, and that each signed a deed of trust as husband and wife. They also commenced living together at this same time. This evidence logically supports the inference that Claveria and Carolina intended their relationship to be permanent rather than temporary. The purchase of property by a husband and wife imposes Texas community property law upon the transaction. Thus, it is not equally logical to infer that such a purchase is made for investment purposes, as the majority suggests since investors would not sign the deed as husband and wife. Rather the evidence of the joint purchase of the house, as husband and wife makes the inference more probable than not, that Claveria and Carolina intended a permanent relationship. Thus I would hold that it is legally sufficient evidence that Claveria and Carolina lived together "as man and wife."

As I understand the majority opinion, they alternatively support their judgment by holding that where an inference of an agreement to be married is relied upon to prove a prior marriage, proof of a subsequent marriage conclusively rebuts the existence of the prior marriage under Tex. Fam.Code Ann. § 2.01 (Vernon 1975). I cannot agree that § 2.01 mandates such a result. In support of its holding, the majority cites *Rosetta v. Rosetta*, 525 S.W.2d 255 (Tex.Civ.App.—Tyler 1975, no writ), which is not supportive of the majority's position. The *Rosetta* holding was based on the factual insufficiency of the evidence. In *Rosetta*, the appellant's assertion that there was no evidence to support the finding of a common-law marriage was specifically overruled. *Id.* at 260. Neither does the language of § 2.01 support the majority's holding. The majority has imposed a hierarchy on § 2.01 that places ceremonial marriage on a higher level than a common-law marriage. I find no basis under Texas law for such a hierarchy, and the majority has cited no authority for that proposition. Regardless of my personal views as to the preferability of ceremonial marriages over less formal relationships, any such changes in the law should be left to the legislature.

Under the majority's holding a woman claiming to be a common-law wife could live with a man forty years, bear his children and stand by him through good times and bad. Then when the man left her to ceremonially marry a younger woman and died shortly thereafter, the woman who had devoted her entire life to him would, in all probability, be barred from proving that she was his wife. In almost all cases of this type, the only direct evidence of an agreement to be married would be testimony by the purported common-law widow as to her conversations with the decedent. Since that testimony would be barred by the dead man statute, her only recourse would be the inference of an agreement to be married permitted by § 1.91(b). The majority would hold that the presumption of validity of the later ceremonial marriage under § 2.01 forecloses applicability of the § 1.91(b) inference. I cannot agree that in enacting § 2.01, the legislature mandated such a result.

Because I find the evidence legally sufficient to support findings that Claveria and Carolina held themselves out as being married and lived together as man and wife, I would affirm the judgment finding a common-law marriage between Claveria and Carolina and barring Claveria from his will contest against appellee.