INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY V.
EVARISTO VALLEJO.

No. 1864.  Decided November 4, 1908.

**1.—Negligence—Question of Law.**

Where there is no evidence of negligence or of fact from which negligence can be inferred, it is not permissible to indulge in mere conjecture; the absence of negligence is determined as a question of law.   (P. 74.)

**2.—Same—Injury to Child on Track.**

In case of a child seen on the main track of a railway by the locomotive fireman of a freight train moving on the side-track and injured by coming in contact with the moving train without knowledge of the train crew, facts considered, and held to disclose no evidence of negligence on the part of those operating the train.   (Pp. 72–75.)

**3.—Same.**

There is no duty on the part of railway employees discovering a small child about railway tracks, but in no danger in its position from the movement of their train, to stop same and remove the child to a place of safety, or discharge a duty of a nurse to him, or keep a lookout for his protection to the rear of their train.   (Pp. 74, 75.)

**4.—Case Distinguished.**

Missouri, K. & T. Ry. Co. v. Nesbit, 43 Texas Civ. App., 630, and other cases of injury to children by railway trains, distinguished on their facts from this case.   (P. 74.)

ON MOTION FOR REHEARING.

**5.—Reversal—Remanding Cause.**

On reversing for lack of evidence a recovery for personal injury to a child too young to testify at that trial, the Supreme Court decline to remand, though the child might be of sufficient age at another trial, believing such testimony likely to be unreliable.   (P. 75.)

Error to the Court of Civil Appeals for the Fourth District in an appeal from Webb County.

Vallejo, by his next friend, sued the railway company and obtained judgment.   It was affirmed on appeal by the defendant who thereupon obtained writ of error.

*John M. King* and *Hicks & Hicks,* for plaintiff in error.—In order for the plaintiff to recover he must prove the circumstances under which he was injured, and while the same may be proved by circumstantial evidence, the evidence must be of such a character as to reasonably show how the accident occurred, and unless this is done plaintiff can not recover.   Missouri, K. & T. Ry. v. Greenwood, 40 Texas Civ. App., 252; English v. International & G. N. Ry., 44 Texas Civ. App., 467; Railway Co. v. Porter, 72 Texas, 307; Dobbins v. Brown, 119 N. Y., 188; Penn. Ry. v. Hensel, 70 Ind., 569; Railway Co. v. Crowder, 63 Texas, 502, 76 Texas, 501.

While it is the duty of those operating a train to keep a proper lookout to discover persons on or near the track they are supposed to keep such lookout ahead, and a fireman is not required to look back down his train to see whether some person whom his engine

has passed may not attempt to get on or under the moving cars, and this rule is not altered because such person is a boy five or six years of age, who is seen going down another parallel track, fourteen feet distant, toward his home, a few hundred feet away, and in an opposite direction from that in which the train is moving, and who shows no disposition to leave the track or approach the train as it passes him, but evinces an active intention to go in the other direction. Galveston, H. & S. A. Ry. Co. v. Kieff, 94 Texas, 334; Green's Adm'r, v. Maysville, &c., Ry., 78 S. W., 439; International & G. N. Ry. v. Wear, 33 Texas Civ. App., 492; Perdigo v. Louisville & N. Ry. Co., 68 S. W., 462; Threshing Mach. Co. v. Burns, 38 Texas Civ. App., 412; Jefferson v. Birmingham Ry. Co., 38 L. R. A., 458; Chilton v. Cent. Trac. Co., 156 Pa., 125; Barney v. Hannibal, &c., Ry., 28 S. W., 1069; North Texas Const. Co. v. Bostick, 98 Texas, 239; Atchison, T. & S. F. Ry. v. Plaskett, 47 Kans., 107; Baltimore & O. Ry. v. State, 18 Atl., 969; Railway v. Stumps, 69 Ills., 414; Masheck v. St. Louis Ry., 71 Mo., 277; Bishop v. Union Ry. Co., 14 R. I., 320; Catlett v. Ry., 57 Ark., 461; Patterson on Ry., Acc. Law, sec. 75. It has been uniformly held that moving cars are not such attractive or dangerous objects as to come within the rule sometimes applied to what are known as the "Turntable cases." Railway Co. v. Connell, 88 Pa., 520; Catlett v. Railway Co., 57 Ark., 464; Hestonville Railway Co. v. Connell, 88 Pa. St., 520; Railway v. Stumps, 69 Ill., 414; Railway Co. v. Plaskett, 47 Kans., 107. No court has held, so far as we have been able to find, that a railway company must guard its moving trains, even when slowly moving. Jefferson v. Birmingham Ry., 38 L. R. A., 459; Atchison, T. & S. F. Ry. v. Plaskett, 47 Kans., 107; Hestonville, &c., Ry. v. Kelly, 102 Penn., 119; Barney v. Hannibal, &c., Ry., 28 S. W., 1069. When a child was already in a position of safety, and was proceeding away from any possible danger, there was no duty upon the part of the railway company to place a watchman over it. North Texas Const. Co. v. Bostick, 83 S. W., 14; Threshing Mach. Co. v. Burns, 38 Texas Civ. App., 412. It is also generally held that an engineer or motorman is not required to anticipate that a child in a position of safety will suddenly run into or against a train or car. International & G. N. Ry. v. Wear, 33 Texas Civ. App., 492; Mascheck v. St. Louis Ry., 71 Mo., 277; Bishop v. Union Ry., 14 R. I., 320; McAdam v. E. P. Ry. Co., 6 Ohio Civ., 606; Chilton v. Central Trac. Co., 152 Penn., 425; Miller v. Union Trac. Co., 195 Penn., 639; Gannon v. New Orleans Ry., 20 So., 223; Green's Admr. v. Maysville, etc., Ry. Co., 78 S. W., 441.

A fireman of a locomotive backing and pulling a train of freight cars behind it, who sees a boy five or six years old going down a parallel track, twelve or fourteen feet away, and walking in an opposite direction from the train, is not required to look back and keep the boy in view, for fear he may try to cling to or go under the train, where he shows no intention of going about the train, but when last seen is moving swiftly away from the train toward his home. Same authorities.

*Bertrand & Arnold,* for defendant· in error.—The evidence clearly establishes that, had the fireman remained at his post of duty and exercised ordinary care to guard the child against injury, he would ·have seen the child as it started towards the train, and by calling to the engineer to put on the air the train could have been stopped instantly within three feet and the accident could have thus been easily avoided.    Ollis v. Houston E. & W. T. Ry. Co., 73 S. W., 31; Walters v. Railway Co., 41 Iowa, 71; North Texas Const. Co. v. Bostick, 98 Texas, 242; Missouri, K. & T. Ry. Co. v. Nesbit, 43 Texas Civ. App., 630; Davis v. St. Louis S. W. Ry. Co., 92 S. W., 831; Ott v. Johnson, 38 Texas Civ. App., 491; Missouri, K. & T. Ry. Co. v. Hammer, 34 Texas Civ. App., 354; East Tennessee Coal Co. v. Harshaw, 29 S. W., 289; Railway Co. v. Watkins, 88 Texas, 20; San Antonio St. Ry. Co. v. Mechler, 87 Texas, 628; St. Louis, I. M. & S. Railway Co. v. Denty, 37 S. W., 721.

MR. JUSTICE BROWN delivered the opinion of the court.

The appellee was a child three years old; his mother lived in a section house of appellant at Bermuda, a station between the city of San Antonio and Laredo.    At the station there was a side track of considerable length, which was situated on the west side of the main track, the section house was on the east side of the main track.    A freight train was on its way to Laredo, and arriving· at Bermuda took the side track in order to let another freight train pass on the main track.    It was after dark, about 8 o'clock.    There were some flat cars loaded with gravel standing on the side track and when the train that took the side track passed in it pushed the flat cars to the south far enough so that the freight train would clear the switch and leave room for the train going to San Antonio to pass. The engine was coupled to the train of flat cars.    After the train which was going north passed on the main track, the freight train, which it is charged inflicted the injury upon appellee, moved backwards toward the main track and pulled the flat cars with it down to the point where they stood before the freight train had entered upon the side track.    The side track was about fourteen feet west of the main track, ·and as the freight train was passing down on the side track to the north the fireman, who was on the east side of the engine, observed the appellee, a small child dressed in white walking along the main track.    The fireman said, "Halloo, Kid," when the child looked and then "struck a trot," going toward the section house.    The fireman went over to the engineer and told him that he had seen some child, "a little bit of a fellow,"· on the main track, and when they came back on that track to be careful, that it might be on that track playing, or something to that effect.    The fireman testified that he saw the child as it went down the track until it went out of his sight, and then he said he "could have seen it further."    There was an electric light on the engine which was burning and gave a bright light upon the main track for a considerable distance and on all the space between the track and the flat cars to within a few feet of the cars.    The fireman spoke to a brakeman, who got on the train at the switch, and asked him if he had seen the

child on the track, and the brakeman said that he had not. Fletcher, the fireman, manifested a good deal of concern and anxiety for the child. He said he was not afraid that the child would go close to the cars of the train he was on, but he feared that the child might stop on the way somewhere and get hurt. No one on the train knew the child was hurt until they got to Laredo. After the train left one of the men at the section house heard a woman crying and the child crying. He went out and found that the mother of the child had it in her arms with one of its feet injured. They took the child to Laredo for treatment. There was no direct evidence as to what place the child was when injured, but the testimony showed that there was blood upon the track at the rear trucks of the second car from the engine where the cars were stopped. The mother seems not to have testified, although she took the child from the track. The engineer testified that it was unusual for the fireman if he saw a person within twelve or fourteen feet of the track to come over and tell him of it. He said that he heard the fireman say, "Halloo, Kid," and the fireman told him about seeing the child. (Fletcher, the fireman, testified that it was his duty to keep a lookout in the direction the train was moving and he did so.) There was some conflict in the statements of Fletcher as to the distance the train had moved after he saw the child and before it stopped. The evidence seems to indicate that the train had moved but a short distance, perhaps two cars length, after he saw the child before it stopped and cut loose from the flat cars.

If there is any evidence in this case which tends to prove negligence on the part of the employes of the railroad company that caused the injury, then an issue of fact was made to be decided by a jury, and of which this court has no jurisdiction. Whether there is such evidence in the record is a question of law which it is the duty of this court to decide.

The important question in this case is, what duty did the railroad company owe to the defendant in error under the facts as they appear in the record? If it be true that the facts disclosed before the jury and presented to us created no duty on the part of the railroad company to the child, then there can be no negligence, and, being no negligence, there can be no liability on the part of the railroad company.

When Fletcher, the fireman, saw the child it was on the main track and fourteen feet distant from the moving train on which Fletcher was. The train was then moving northward and backward and the child was on the main track going in the opposite direction. While upon the main track the child was in no present danger from the moving train. The only danger that could be said to exist was that he might change his course, and leaving the main track cross over to the side track and come in contact with the train. But this danger depended upon the action of the child and could not be guarded against by the employes by any means consistent with the performance of their duties in the operation of the train. They could exert no control over the child's action, and, situated as he and the train were in relation to each other, there was no danger that the

child would be injured by the train's movements so long as he continued in the direction he was going. The question then arises, what should the employes of the railroad company have done under the circumstances to guard that little child against injury? It is manifest that there was nothing for them to do but what they did do, leave the child in its then secure condition and attend to their duties, or stop the train and send someone to carry the boy to his mother. Would anyone contend that it was the duty of the railroad company to cease the operation of its train in order to perform the duties of nurse? If there had been probability that by the continued movement of the train injury would be inflicted on the boy the duty to stop the train would have arisen, but no such result was indicated by the facts. We conclude that negligence can not be predicated upon the fact that the fireman saw the child upon the main track after night, although he knew it was liable to get into danger, because such condition of things imposed no obligation upon the railroad company and therefore there was no act to be performed by its employes the failure to do which renders the company liable for the results.

There is testimony which tends to show that the fireman was mistaken as to the distance the child had traveled when it went out of his sight, and the evidence shows that he did in fact leave the main track and cross over to the side track and come in contact with the moving train and thereby received the injury, but these facts are not sufficient in themselves to create a liability on the part of the railroad company. The fireman testified that it was his duty to keep a lookout in the direction the train was moving, and this is manifestly true, because he would be called upon to inform the engineer of signals which might be given by the train crew in the movements of the freight train. Therefore, it was not his duty to keep the lookout to the rear of the moving train. Green v. Maysville & B. S. Railroad, 78 S. W., 439; Pedigo v. Railroad, 68 S. W., 463. Since it was not the duty of the fireman to watch in the rear, the fact that the child did pass over at a place where he could have been seen does not justify an inference that the fireman saw him as he passed from one track to another. This is the ground upon which the Court of Civil Appeals concludes that the jury rested their verdict. It is perhaps the most plausible theory that can be advanced in support of their finding, but in our opinion it is absolutely without probative force upon the question whether the fireman saw the child or not. An inference can only be drawn from facts, and there being no facts upon which to base it, such an inference or conjecture is wholly unsupported.

The cases cited by the appellee are not in point on this question. In the case of Missouri, K. & T. Ry. Co. v. Nesbit, 43 Texas Civ. App., 630, the child was going in the same direction as the train and was on a road which crossed the railroad track, he was in plain view of the engineer. It was evident to all bystanders that the child intended to cross the track. It was the duty of the engineer to keep a lookout, and if he had done so he could have seen the boy. The facts distinguish that case from this. It is unnecessary for us to

comment upon the other cases cited, their facts are so dissimilar to this case that their want of applicability here is manifest.

There is a marked difference between the duty of the crew in starting a standing train about which children have been loitering, and the continued operation of a train already in motion when no child has been observed to be near to it. To impose upon the crew of a train the duty to watch all children that may be about the railroad yards and tracks during the operation of the trains would be going beyond any adjudicated case which has been brought to our notice and beyond the proper limitation of all correct and just principles of law.

We are of opinion that there is no evidence upon which to base the verdict in this case and that the trial court should have instructed the jury to return a verdict for the defendant. The Court of Civil Appeals erred in affirming the judgment of the District Court, for which error judgments of the District Court and Court of Civil Appeals are reversed and judgment is here rendered for the plaintiff in error.

### ON MOTION FOR REHEARING.

#### Opinion delivered January 13, 1909.

In preparing the opinion in this case the writer through mistake made the statement as follows: "The fireman testified that it was his duty to keep a lookout in the direction the train was moving and he did so." An examination of the record shows that the fireman did not so state, and the statement will therefore be eliminated from the opinion.

We have reconsidered the case and see no reason to change our conclusion. There is no evidence in the record upon which a verdict for the plaintiff could be properly sustained.

Counsel for the defendant in error earnestly insist that this court shall remand the case in order to enable them to introduce as a witness the mother of the child that was hurt, who was in the court at the last trial and not introduced for reasons stated by counsel, and also that the plaintiff himself might be introduced as a witness. It is stated that at the last trial he was too young to understand the obligation of an oath and for that reason was not offered, but now he is of age sufficient to be competent as a witness and could testify to the facts as they transpired, and would testify that when the fireman was looking at him he was going directly toward the train. We do not believe that this court should remand the case to enable the plaintiff to testify. It is possible that the boy might remember something about the transaction, but with his surroundings and the number of years that have elapsed we think it is not probable that his testimony as to the facts of that transaction would be reliable.

The motion is overruled.

*Reversed and rendered.*