TEXAS & NEW ORLEANS RAILROAD COMPANY v. FRED OTIS BROUILETTE.

Decided December 19, 1908.

#### 1.—Railroad—Duty to Keep Lookout—Injury to Infant—Charge.

While it is the duty of employees of a railway company in operating a train to keep a lookout for the safety of persons upon or approaching a street or other public crossing, and a failure of duty in this regard whereby an injury occurs would be actionable negligence, in an action for personal injuries to an infant by the backing of a passenger train while at a station, evidence considered, and held insufficient to show any duty resting upon the railroad employees to discover the dangerous position of the child before it was injured, and hence a charge submitting to the jury as an issue of negligence the failure of the employees to discover it, was reversible error.

#### 2.—Same—Personal Injuries—Duty and Liability Reciprocal.

To justify a recovery against a railroad company for personal injuries the facts must show the existence of a duty upon the part of the railroad company to the person injured; if no such duty is shown, there can be no negligence, and being no negligence, there can be no liability.

Appeal from the District Court of Orange County. Tried below before Hon. W. B. Powell.

*Baker, Botts, Parker & Garwood, Parker & Hefner* and *Will E. Orgain,* for appellant

*Holland & Holland,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—Fred Otis Brouilette, two years and seven months old, lived with his father in the City Hotel situated on Green Avenue in the city of Orange, a short distance north of appellant's railroad and depot. On November 16, 1906, about noon, appellant's passenger train, headed west, came into Orange and stopped at the usual place, the engine being at a water tank just west of the depot, where it took water. This occupied some four or five minutes. Usually while taking water the passengers alighted and embarked and baggage was discharged and loaded, but sometimes, when there was a large amount of baggage to be loaded, the train, after taking water, would be backed until the baggage car would be opposite the baggage room and the baggage would be loaded from that point. On the occasion in question the large amount of baggage to be loaded required that the train be backed, and in backing it the appellee was run over and injured.

When the train came into Orange, E. G. Brouilette, father of Fred Otis, was in the City Hotel, and immediately upon the arrival of the train started to the depot, which is situated south of the railway track, leaving Fred Otis with an older brother inside the hotel sitting at the table. The train having stopped across and blocked Green Avenue, and the cars of the train being vestibuled so that he could not pass between them, Brouilette gained the depot by walking eastwardly by the side of the standing train and crossing the track at the end of the rear car. The first seen of Fred Otis after his father left him in the hotel was

just as the train started to back and he was then falling upon the track, having been struck and knocked down by the rear end of the rear car of the train. He was then between the rails but nearest the north rail. The physical facts, as well as the testimony of all the witnesses, tend to prove that the child at the very moment the train began to back was standing on the track immediately behind the last car. The presumptions arising from the facts are that the child attempted to follow his father to the depot, taking the same route, and had just reached and gotten upon the track as the train began to back. He was not seen by any witness or by any of the trainmen when he left the hotel, nor while approaching the place where he was hurt.

The evidence further shows that the greater portion of the city of Orange and appellant's depot were south of the track; that passengers got on and off the train on that side; that all persons having business there when the trains came in, transacted it on that side, and that the train being entirely vestibuled, only the doors on the south side were opened while those on the north always remained closed, and that the duties of the train operatives directed their attention and activities to the south side, except that of the engineer, who, while his station was on the right or north side of the engine, on this occasion occupied most of his time while the engine was taking water in oiling his engine. None of the train crew, except the conductor, knew until the train was ready to start that it would have to be backed for baggage. The conductor motioned to the brakeman to back and guard the rear of the train and see that the track was clear, and the great weight of the evidence conclusively shows, we think, that the brakeman, in obedience to the signal of the conductor, went to the rear of the train, looked to see if the track was clear and seeing no one upon it, swung himself on the platform steps and gave to the conductor the signal to back, which was repeated to the engineer, who, after looking back down the train to see if the track was clear on his side, and it appearing that it was, immediately put the train in back motion. At the time the brakeman looked at the track, we think it clear from the evidence that the child was standing on the track so close to the car as not to be discovered by a person of ordinary care standing at or upon the steps of the car platform where the brakeman stood, but to have seen him it would have been necessary for the brakeman to go behind the car to look to see if any one might be there, or to stoop and look under the car.

Under this state of facts the court charged the jury, in effect, that it was the duty of the employes to use ordinary care to discover an infant of tender years who might be near the track, and that if, by the exercise of such care, they could have seen the child approaching from the hotel to the place where it was hurt but failed to discover it, to find for plaintiff.

The giving of the charge was error which requires a reversal of the judgment. It is undoubtedly the duty of employes of a railway company in operating a moving train to keep a lookout for the safety of persons upon or approaching a street or other public crossing, and a failure of duty in this regard whereby an injury occurs would be actionable negligence. (Missouri, K. & T. Ry. v. Belew, 26 Texas Civ. App., 8.) To justify a recovery in any case, however, the facts must

show the existence of a duty upon the part of the railroad company to the person injured. If no such duty is shown, then there can be no negligence, and being no negligence, there can be no liability upon the part of the railroad company. (International & G. N. Ry. Co. v. Vallejo, 113 S. W., 4.) The evidence shows that from the time the child was left in the hotel until it reached the track the train was standing and that none of the trainmen saw the child at any time nor knew of its approach toward the train. All were engrossed in their respective duties and all were on the opposite side of the train except the engineer, who was engaged in oiling his engine. It can not be said that the trainmen owed to the appellee the duty of watching the intervening space between the track and the hotel while the train was standing still. Doutless they could have seen the child had they watched, because it must have passed in plain view of any one that might have been looking from the train in that direction, but as the train could not have injured any one until it was moved the failure to look while it was standing still was not an omission of any duty appellant owed to the appellee, and therefore not actionable negligence. There was nothing in the situation that required them to anticipate that the child or any person wanting in ordinary discretion would approach the train, or that the approach of such an one at that time would be fraught with danger. Had any of the trainmen in fact seen the child as it passed down to the rear of the train, or had the train been in motion at the time the child approached in the space, which gave an open view to the operatives, a different question would be presented. (Missouri, K. & T. Ry. v. Nesbit, 43 Texas Civ. App., 630; Missouri, K. & T. Ry. v. Hammer, 78 S. W., 708.) The fact that the child might have been seen while it was making its way to the place where it was injured did not, under the facts of this case, create a duty upon the part of the employes to discover it, and the charge submitting as an issue of negligence the failure of the trainmen to discover it, was affirmative error, and the assignment raising the point is sustained.

The other assignments need not be passed upon. For the error indicated the judgment of the District Court must be reversed and the cause remanded.

*Reversed and remanded.*