**PACIFIC EMPLOYERS INDEMNITY COMPANY, Appellant,**

v.

**Hellen AGUIRRE, a widow, et al., Appellees.**

**No. 4726.**

Court of Civil Appeals of Texas.

Waco.

Aug. 1, 1968.

Rehearing Denied Aug. 29, 1968.

**34**

Bryan & Patton, Houston, for appellant.

Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellees.

## OPINION

TIREY, Justice.

This is a compensation case. Appellees are the alleged common law wife and three minor children of the deceased employee. The jury found from a preponderance of the evidence that before 1966 Hellen Aguirre and Serapio Aguirre agreed to become man and wife, and that they lived together as husband and wife in the community until Serapio's death; that Serapio sustained an injury on or about September 24, 1966, and that such injury was a bodily injury, and was sustained in the course of his employment with Hearne Steel Company; that such injury was the producing cause of the death of Serapio; that such injury was not solely caused by a bodily condition which existed prior to September 24, 1966.

We quote Special Issue No. 7: "Do you find from a preponderance of the evidence that any marriage between Serapio Aguirre and Consuelo Aguirre had not been dissolved before the death of Serapio Aguirre?" To which the jury answered: "We do not."

The Court overruled the defendant's motion for judgment N.O.V. and granted plaintiffs' motion on the verdict. In the Court's judgment we find this recital:

"Upon Motion of the Plaintiff for Judgment and the Court's finding that under the pleadings, evidence, and stipulations of the parties (as to the reasonableness and necessity of hospital and medical and funeral bills incurred, and as to the payment of such recovery in a lump sum) the Court does here and now enter judgment for Plaintiffs * * *."

The Court decreed that Hellen Aguirre recover the sum of $9,750.00 with interest at 6% from date of judgment until the same is paid, and fixed 30% thereof in favor of her attorneys, and further decreed that each of the minor children recover $1919.15 with interest at the rate of 6% per annum from date of judgment, and fixed 30% of each amount as attorneys' fees for appellees, and taxed the costs against defendant.

The judgment is assailed on 12 points. Points 1, 2, 3, 4, 5, 6 and 7 present actually one point, which is that the Court erred in entering judgment for the plaintiff because there was no competent evidence adduced that established that Serapio sustained an accidental, compensable injury in the course of his employment, which was a producing cause of his death. Defendant contends under these points that Serapio had a preexisting cerebral aneurysm; that on September 24, 1966, on the premises of his employer, and while operating a forklift, Serapio became noticeably ill; that he died October 13, 1966.

Defendant in its brief says:

"While it is true that there is some conflict in the testimony as to the exact type of work Serapio Aguirre was doing during the morning prior to his seizure, the simple fact remains that there is no evidence, expert or otherwise, that Serapio Aguirre's employment in any way contributed to or brought on his death. If the Defendant is liable for compensation benefits in this case, it will be simply because the employee had a seizure or at-

tack from a pre-existing condition while on the employer's premises."

Perhaps we should say at this point that defendant did not attack the common law marriage of Hellen and Serapio, nor the legitimacy of their three minor children.

Defendant says that a fair summary of the judgment shows that Serapio came to work on September 24, 1966 at 6:18 A.M. From that time until about 8:15 A.M. he did some light work sitting at a machine; that about 8:15 or 8:20 A.M. he took a 15 or 20 minute break, at which time he stated to a fellow-employee that he was not feeling well; that after completion of the break until the time he became acutely ill, he was helping shift some coils of fencing which had previously been loaded onto a truck and was actually engaged in operating a fork-lift at the time it became obvious that he was ill; that in 1955 he had been diagnosed as having suffered a subarachnoid hemorrhage which was diagnosed "aneurysm anterior communicating arteries"; that on September 24, 1966 following his attack, he was diagnosed as having suffered another subarachnoid hemorrhage; that on September 24, 1966 an operation was performed; that the post-operative diagnosis showed a "large intracerebral hemotoma deep right posterior frontoparietal lobe, with large lobulated aneurysm trifurcation right middle cerebral artery"; that during surgery a large cavity containing necrotic brain and blood was found; that the pathology report showed blood clots from intracerebral hematoma; that deceased died October 13, 1966. Defendant contends that the exact cause of death is not shown by the evidence.

Defendant further contends that the evidence shows that deceased had this pre-existing cerebral aneurysm, and that he had a seizure or attack while at work, and that apparently this was caused from a rupture of a pre-existing aneurysm and that he later died. Defendant says there is no evidence, expert or otherwise, as to whether or not the work in which deceased was engaged in any way contributed to the rupture

of the aneurysm, or that if so this was the cause of his death. Defendant further says that notwithstanding there is some dispute as to exactly how strenuous his work was, looked upon in the light most favorable to plaintiffs, there is no probative evidence that his injury grew out of or was connected with his work. Defendant claims that the factual situation here, considered in the light most favorable to the plaintiffs, brings this cause within the rules announced by the Supreme Court in the case of Insurance Company of North America v. Myers, 411 S.W.2d 710. Defendant further contends in his brief:

"The thrust of the Supreme Court holding in the above case is that where the cause of death involves a complex medical question, the jury will not be allowed to speculate and guess as to the cause, but that causation must be established by competent medical evidence based on reasonable probabilities."

Appellees contend that the holding of the Supreme Court in the Myers case is reflected in the following language:

"We note as not controlling here those decisions in workmen's compensation cases in medical situations not involving the highly uncertain medical problem of the nature, origin and aggravation of cancer. See Maston v. Texas Employer's Ins. Ass'n, 160 Tex. 439, 331 S.W.2d 907 * * *; Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581 * * *; Norwich Union Indemnity Co. v. Smith, 12 S.W.2d 558 (Tex.Com.App. * * * jdgmt. adopted); Aetna Ins. Co. v. Hart, 315 S.W.2d 169 (Tex.Civ.App.—Houston * * * n. r. e.); American General Ins. Co. v. Barrett, 300 S.W.2d 358 (Tex. Civ.App.—Texarkana * * * n. r. e.); Atkinson v. United States Fidelity and Guaranty Co., 235 S.W.2d 509 (Tex.Civ. App.—San Antonio * * * n. r. e.); Associated Employers Lloyds v. Self, 192 S.W.2d 902 (Tex.Civ.App.—Dallas * * n. r. e.); Galveston, H. & S. A. Ry. Co. v. Harris, 172 S.W. 1129 (Tex.Civ.App.— writ ref'd)."

It is the contention of the appellees that absent such conditions as cancer, where medical authorities are in disagreement as to the relationship, if any, of trauma to cancer, or in malpractice litigation, it is not necessary that there be expert medical testimony establishing the probable cause of the compensable disability or death. Appellees say that since none of the assignments here under consideration claim that the findings of the jury are against the great weight and overwhelming preponderance of the evidence, they are all no-evidence contentions; that as a consequence it is not permissible for us to consider any evidence against the verdict, citing Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359; Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; that the principle here announced is applicable to Workmen's Compensation cases, citing United States Fidelity & Guaranty Co. v. Hernandez, Tex.Civ. App., 410 S.W.2d 224 (Eastland Court, n. r. e.); Trinity Universal Ins. Co. v. Farley, Tex.Civ.App., 408 S.W.2d 776 (Tyler Court, no writ hist.).

Appellees point out that at the time of Serapio's death on October 13, 1966 he was a young man 34 years old; that he had been married to Hellen since April 26, 1960, and as a result of this union four children were born, one predeceasing Serapio; that in 1955 he was admitted into the hospital for a 3-day period as a result of vomiting and headaches; that this attack occurred while he was chopping cotton when it rained and he continued to work in the rain; that a "bilateral carotid arteriogram" which, taken together with the other symptomatology, resulted in the medical conclusion that he suffered a "subarachnoid hemorrhage due to suspected aneurysm of the anterior communicating artery." His condition at discharge was improved and he was told to return home and remain in bed for six weeks. In the history given at the time of the subject hospitalization in St. Joseph's Hospital in Houston, it appears that in connection with the 1955 hemorrhage, "he was warned not to undergo strenuous labor at any time."

Appellees contend that under the doctrine announced in Fisher v. Shipp, Tex.Civ.App., 411 S.W.2d 638, n. r. e., the Court held that a jury was entitled to consider the effect of a prior heart attack and circulatory problem on the claimant's present condition without supporting medical evidence.

Serapio had been employed by Hearne Steel Company for approximately six years prior to the time he suffered this last attack. He did varying types of labor, such as operating a press machine, a forklift, and otherwise performing laboring tasks required of him by his employment. In the year prior to the cerebral assault involved in this case he had worked 293 days without incident, and at the time he was admitted to the hospital in connection with his terminal condition he was a well developed and nourished, awake, right-handed man; that there was nothing about his work abilities or appearance that caused his co-workers to sense or note that he had any unusual physical problem or predisposition to such an occurrence.

On September 24, 1966 he reported to work at 6:18 A.M. and commenced working on a cutting band machine which makes a part of the fencing support materials fabricated by Hearne Steel Company; that he worked on this machine until about 8:15; that he was waiting for the truck driver, Sam Eddy Nelson, to report to work so that he, Sam and Luelish "Lish" Selman could perform some work with respect to a load of fencing material to be shipped to Indiana. Appellees contend that it was during the course of performing this work that Serapio sustained a cerebral-vascular accident which resulted in his death in October, 1966, and that the extent of the contribution of Serapio to the admittedly heavy labor of re-arranging the load on the truck was the central point of the trial.

■ Since appellant contends that it is entitled to judgment N.O.V. on the verdict of the jury it is bound by the same rule as

regards an instructed verdict. Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, writ ref. We have this statement of the rule:

"Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.' " Citing a number of cases.

■ Our Supreme Court has not seen fit to change or modify the foregoing rule. See also Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359; Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696. Whether there is any or no evidence in the record which would, if accepted by a jury, have raised an issue of fact which would have supported a judgment for the plaintiffs is a question of law, not of fact. International & G. N. Ry. Co. v. Vallejo, 102 Tex. 70, 113 S.W. 4, affirmed 102 Tex. 70, 115 S.W. 25; Childre v. Casstevens, 148 Tex. 297, 224 S.W.2d 461.

Shortly after Serapio became ill, he was carried to the hospital at Hearne and Hellen was notified of her husband's illness, and she came to the hospital in about 40 minutes thereafter and was admitted to the room where Serapio was, and she testified that Serapio said:

"He told me, ah, I asked him, I said what happened to you? He told me, he said, *me and Lish was on top of the truck. We was moving this wire around* and said I told Lish that my head was hurting. He said that they had been working up there right at two hours on the truck. And said that they had been moving the wire

and said that he told Lish my head is hurting and Lish told him well you get down and operate the forklift and he got on the forklift and started operating it and felt like something had hit him. And he said the next thing that he know they was taking him off of the forklift, Lish and Sam Eddy Nelson."

This testimony was objected to by appellant but it was received by the Court as a present declaration of pain, but appellant contended that it could not be received on an issue of causation. The evidence was received subject to appellant's motion to strike, but appellant did not file a motion, nor has it assigned a point of error complaining of the admission of such evidence. However, the appellee cites the following cases bearing on the admissibility of such testimony. Truck Ins. Exchange v. Michling, 364 S.W.2d 172 (Sup.Ct.); Texas Employers Ins. Ass'n v. Noel, Tex.Civ.App., 269 S.W.2d 835, n. r. e.; Atkinson v. United States Fidelity & Guaranty Co., Tex.Civ.App., 235 S.W.2d 509, n. r. e.; Texas Employers Ins. Ass'n v. Shifflette, Tex.Civ.App., 91 S.W.2d 787, writ dism. See also Texas Employers Ins. Ass'n v. Hatcher, Tex.Civ. App., 365 S.W.2d 641, n. r. e.; see also the opinion of Justice Alexander in Prater v. Traders & Gen. Ins. Co. of Tex., Tex.Civ.App., 83 S.W.2d 1038, no writ hist. That case has been cited with approval by our appellate courts and in a per curiam opinion by the Supreme Court in Great American Indemnity Co. v. Elledge, 159 Tex. 288, 320 S.W.2d 328.

Dr. James P. Fleming testified in part by deposition as follows:

"Q. Have you had occasion to see professionally a patient by the name of Serapio Aguirre on or about September 24, 1966?

A. Yes.

Q. Where did you see Serapio Aguirre?

A. Searcu-Fleming Clinic & Hospital, Hearne, Texas.

Q. At the time that you saw Serapio Aguirre on September 24, 1966, would you describe his appearance?

A. Upon admission the patient was semi-conscious, rubbing the right side of his head. His left arm and leg were completely paralyzed and he was perspiring profusely.

Q. If you made any medical observations or examination of Serapio Aguirre, would you tell us what your findings were on such observation or examination?

A. Upon examination I found his blood pressure to be 130/80; his hemoglobin 14.3 grams; his red blood count 4,660,000 cells; his white blood count 9,600 cells; with a normal differential. A seriological test for syphilis was negative. One hour later he became very restless and was given two grams of sodium phenobarbitol, which was given to him intravenously. An ice cap was placed on his head and at 11:00 A.M. he vomited a large amount of undigested food. His blood pressure stayed at 140/90. It was my observation that he was suffering from a cerebral vascular accident.

Q. Had you ever treated Serapio Aguirre for a similar or any related such condition before September 24, 1966?

A. No."

■ As we understand the record in this case on the whole, (there is no evidence that Serapio had been ill since the attack of 1955 until the illness in 1966) it is to the effect that there is lay and medical evidence supporting the verdict of the jury. We think there is medical evidence that the hemorrhage was produced by physical labor and strain arising out of the employment of Serapio. From Dr. Fleming's testimony that was admitted before the jury, the exertion

of physical injury by a man such as Serapio would probably explain the onset of his fatal assault. It is true that Dr. Fleming related it to the forklift operation, but when the evidence as to what the deceased was actually doing is considered in relation to the answers given by the witness Fleming, and discarding all unfavorable inferences that may have been drawn by appellant, the test or exception of the Myers' case has been fully satisfied.

Sam Eddy Nelson, the truck driver, testified to the effect that Serapio was on the truck helping to re-arrange the heavy wire so as to get proper balancing on the truck, and that he worked—at least while he saw him in this capacity—at least 25 minutes or more. We think it is also without dispute that he became ill while he was in that particular line of heavy work. So when we consider the record in this case on the whole, and disregarding all unfavorable evidence against the verdict, we think the Myers case has been completely satisfied. Accordingly, points of error 1, 2, 3, 4, 5, 6 and 7 are overruled.

The defendant has grouped his points 8, 9, 10 and 11 under one argument, and says: "These points involve the primary question of whether or not there is evidence to support the judgment based on the jury finding that a prior existing marriage between Serapio Aguirre and Consuelo Aguirre had not been dissolved before the death of Serapio."

■ The plaintiffs here seek recovery on the basis that Hellen is the wife under a common law marriage and is by reason thereof a statutory beneficiary under the Workmen's Compensation Act, Vernon's Ann.Civ.St. Art. 8306, Sec. 8a. The defendant does not attack the sufficiency of the evidence establishing a common law marriage per se, but takes the position that the common law marriage was not valid because of a pre-existing undissolved ceremonial marriage between Serapio and Consuelo, his first wife. So the question here is whether the evidence presented shows

that the prior marriage has not been dissolved and therefore overcomes the presumption of validity of the subsequent common law marriage. The controlling authority here is Texas Emp. Ins. Ass'n v. Elder, 155 Tex. 27, 282 S.W.2d 371. In that case we find: "The presumption in favor of the validity of a marriage which, as in this case, has been duly shown to have been contracted is one of the strongest, if, indeed, not the strongest, known to law. 'The presumption is, in itself, evidence, and *may* even outweigh positive evidence to the contrary.'" (Emphasis added).

The record shows that Serapio married Consuelo on June 28, 1953. The marriage license and certification of marriage is in evidence and Consuelo testified to a ceremonial marriage by a Justice of the Peace and also in the Catholic Church. Prior to the marriage in about 1951, Consuelo moved to Robertson County from Robstown, Texas. After the marriage Consuelo and Serapio lived in Hearne until their separation in December, 1957. At that time Consuelo left Robertson County and went to Nixon, where her parents lived. Serapio knew where she was. Consuelo and her parents continued to live in Nixon until about two years prior to the trial, at which time they moved to Robstown.

Consuelo never filed a suit for divorce or annulment and she never received any notice or indication that Serapio was suing for divorce or annulment. Insofar as she knew, she was still married to him at the time of his death. Since separating from Serapio she has never lived anywhere other than Nixon or Robstown, and has gone by no name other than Cisneros or Aguirre.

Joe Carl Willis, District Clerk of Robertson County, testified that he had searched his records from 1918 to 1967 and could find no record of a divorce or annulment of the marriage of Serapio and Consuelo. He did testify that a prior clerk had not kept his records in an exemplary fashion prior to 1963.

Tony Barria testified to the effect that he was a long-time friend of Serapio; that he knew him prior to his marriage to Consuelo; that after the marriage they continued to be friends and worked together; that he remembered when Consuelo moved out and knew when Serapio started living Hellen, and that they remained friends, and after such relationship was established in 1960, Serapio told Barria that when he got enough money he was going to get a divorce. Serapio told Hellen the same thing. Further, Serapio told the witness he could not marry Hellen in the Catholic Church because he was already married to Consuelo; that Serapio never lived anywhere other than in Robertson County, although he may have been away working one time as long as 6 months; that during the absence he was still in Texas.

■ Defendant contends that the foregoing testimony overcomes the presumption that the marriage of Consuelo and Serapio had been dissolved as a matter of law. Considering the testimony on this question, we must bear in mind that the record must be viewed in the light most favorable to appellees, particularly since there are no complaints relating to the sufficiency of the evidence to support the findings of the jury. It is true that appellant in Point 11 contends that the answer of the jury to Special Issue No. 7 that the prior marriage to Consuelo of Serapio had been dissolved is contrary to the overwhelming weight and preponderance of the evidence. As we stated before, Serapio and Consuelo were married by a Justice of the Peace on June 25, 1953; they were married in the Catholic Church in 1955; they were separated in December of 1957; and at a time when there was no motive to falsify, she wrote to the clerk of Robertson County that "I haven't see him since." This occurred in January, 1966, some eight months before the occurrence in question, at which time Consuelo wrote to the clerk to inquire if Serapio was married again. We think this inquiry clearly indicates a conscious knowledge of some undisclosed action by Serapio or her-

self with respect to a dissolution of their marital relationship.

It is true Consuelo testified that she had not been served with any notice by a sheriff or constable, nor had she read any advertisements in any publication regarding notice of an intended divorce or annulment. Neither of these testimonial assertions is conclusive of what might in fact have occurred. Aside from her affirmative inquiry to the clerk of Robertson County as to whether Serapio had ever married again, she readily conceded that she had three children of her own and was living with Anthony Alonzo, the father of the last two of her children.

Even as to the witness Tony Barria reference is frequently made by appellant. Tony stated that he knew that Hellen was Serapio's wife.

It is true that Hellen testified that the deceased had lived in Robertson County from the time of their marriage in April, 1960 until his death. It is not true that this testimony preempted the inference that Serapio had not obtained a divorce or annulment during that period of time. The District Clerk said in fact that prior to 1963, the time at which he became Clerk, he could not give evidence as to the completeness nor accuracy of his office. To the contrary he readily admitted that there were many instances in which cases were actually tried but in which the files did not reflect the case had ever been filed, and he otherwise indicated the problems he encountered when he succeeded to this office. He positively testified that he could not testify concerning his civil index records prior to 1963, and this index formed the sole basis of his testimony.

▉ Bearing in mind the statements of Consuelo, her actions and conduct in inquiring of the Clerk of Robertson County as to whether Serapio had remarried, and her activities in connection with her own family development, belie her testimony. We think under the record here that it is

entirely possible or probable that Serapio obtained some dissolution of the marital relationship with Consuelo prior to 1963, and after their final separation it may readily be believed under the authorities that he obtained a dissolution in Robertson County. The records of Robertson County are not sufficient to dispel this inference.

As above stated, Hellen and Serapio were married in April of 1960. She further testified that for approximately a year prior thereto Serapio was working in South and West Texas. Considering the strength of the presumption of the dissolution of the prior marriage, neither the answers of Consuelo nor Tony Barria can rise to the dignity of completely negating the distinct possibility that a divorce or annulment was obtained in some other county in which the residence requirements could have been satisfied.

After a careful consideration of all the evidence, taking into consideration all the surrounding facts and circumstances, we are of the view that the evidence is adequate to support the findings of the jury and the judgment of the court, and that the previous marriage of Serapio Aguirre to Consuelo Cisneros had been dissolved, and accordingly the 8th, 9th, 10th, 11th and 12th points of error are overruled.

The judgment of the trial court is affirmed.

### MEMORANDUM OPINION ON MOTION FOR REHEARING

Appellant in its motion for new trial contends that we did not consider and weigh all the evidence in the case as to whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust (In re King's Estate, 150 Tex. 662, 244 S.W.2d 660) and particularly urges this contention with reference to its Point No. 11. We overrule this contention. We thought we made our view clear in this respect in our original opinion handed down on August 1, 1968. However, since appellant has filed its mo-

tion for rehearing we have considered the entire record on the whole under all the surrounding facts and circumstances and we are of the view that the answer of the jury to Special Issue No. 7 is not so against the great weight and preponderance of the evidence as to be manifestly unjust, and it is overruled. Under the doctrine of the Supreme Court, In re King's Estate, supra, and subsequent opinion thereto, we think we should say that in our original opinion we thought it was our duty to consider the evidence in detail under all the surrounding facts and circumstances to determine whether or not the answers of the jury are sustained by the evidence, and particularly whether or not the answer of the jury to Issue No. 7 was against the great weight and preponderance of the evidence and manifestly unjust, and that we did, and overruled Point No. 11, as well as each of the other points.

Appellant's Motion for Rehearing is overruled.